**BRUNSWICK CORPORATION,**
Appellee,

v.

**J & P, INC., an Oklahoma corporation, Lucille Greer and Jack Greer,**
Appellants.

No. 271–69.

United States Court of Appeals, Tenth Circuit.

March 20, 1970.

F. Paul Thieman, Jr., Tulsa, Okl., for appellee.

Granville Tomerlin of Tomerlin & High, Oklahoma City, Okl. (Allan Sasser of Burton, Sasser & Burton, Lawton, Okl., on the brief), for appellants.

Before MURRAH, Chief Judge, and HILL and HICKEY, Circuit Judges.

HILL, Circuit Judge.

This appeal is from a summary judgment granted in favor of appellee,

Brunswick Corporation, in a diversity suit applying the law of Oklahoma.

Appellee Brunswick brought suit alleging *inter alia* that appellants purchased bowling equipment from Brunswick; that appellants executed a conditional sales contract and a promissory note for the purchase price of the equipment; that appellants defaulted on the monthly installment; and that an unpaid principal balance of $229,367.20 plus interest and finance charges was due and owing. Brunswick filed an affidavit for replevin and a replevin bond with the original complaint, and pursuant to the Oklahoma replevin statutes,[1] the United States Marshal, under a writ of replevin, took possession of the equipment in the bowling alley building by rendering it inoperative by removing some essential parts. After holding the property for 24 hours, and in the absence of a redelivery bond executed by appellants, the Marshal made constructive delivery of the equipment to Brunswick. Ten days after the filing of the complaint, Brunswick notified appellants that it intended to hold a public auction to sell the personal property involved to the highest bidder. After advertisement in the newspaper, the sale was held twenty-two days after the complaint was filed. The sale took place after execution of the writ but before judgment was obtained in the replevin action and Brunswick was the highest bidder at the auction, purchasing the equipment outright for the sum of $95,000.

By their answer appellants admitted the indebtedness and the facts were subsequently stipulated so that the only question before the trial court was the legal issue raised by appellants' offset and counterclaim. The counterclaim alleged that Brunswick, by reason of the sale of the personal property involved before judgment was rendered in the replevin action, converted the property under the Oklahoma doctrine of *custodia legis*. Consequently under the collateral principle of conversion, *custodia legis*, appellants sought to recover the fair market value of the property at the place and time of its conversion and to offset that amount against the indebtedness admittedly owing to Brunswick. This offset would be in lieu of reducing the indebtedness in the amount obtained at the foreclosure sale.

There being no factual questions, the trial court on Brunswick's Motion for Summary Judgment proceeded to consider the legal question posed by appellants' counterclaim. Ultimately the trial judge dismissed the counterclaim and granted summary judgment on the grounds that the principle of conversion, *custodia legis* is inapplicable to a conditional vendor, because a conditional vendor (unlike a chattel mortgagee) has title to the goods.

■■ The doctrine of *custodia legis* essentially provides with respect to a replevin action that when personal property is repossessed under a writ of replevin, the property is considered to be in the custody of the court. And until judgment in the replevin action finally determines whether the replevining party or the prior holder is entitled to possession, the property remains in the custody of the court although actual possession may be in either of the parties to the replevin action. The corollary "conversion, *custodia legis*" simply means, converting property in the custody of the court.

■ Conversion, *custodia legis* as recognized in the decisions of the Supreme Court of Oklahoma, has characteristically been applied to a chattel mortgagee who, upon the mortgagor's default, replevins the property and sells it before judgment is rendered in the replevin action. In such cases where the replevined property is held under bond in *custodia legis* and is sold so as to amount to a conversion, Oklahoma case law permits the defendant to the replevin action to void the sale and prove the reasonable market value of the property at the time

---

1. 12 O.S. § 1571 *et seq.*

and place of the conversion. Upon such proof, the defendant-chattel mortgagor is entitled to credit his indebtedness for whatever amount he is able to show the property was reasonably worth.[2]

Our research and that of counsel herein have not revealed any case wherein the Oklahoma Supreme Court has determined whether a conditional vendor, who has replevined the goods upon his vendee's default, is likewise converting when he sells the goods prior to judgment in the replevin action. On this state of the law, appellants take the view, (1) conversion, *custodia legis* is equally applicable to a replevining conditional vendor who unlike a chattel mortgagee retains title to the goods and (2) the Oklahoma Courts would have so held even before the Uniform Commercial Code became effective in Oklahoma in 1963, had the question been presented to them. Alternatively and more strongly, appellants urge that the Uniform Code has reduced a conditional vendor to the same status as a chattel mortgagee. And on this basis, the principle of conversion, *custodia legis* should now apply also to a conditional vendor, regardless of whether the pre-code courts would have applied the principle to a conditional vendor as well as a chattel mortgagee. On the other hand, Brunswick, besides supporting the trial court's opinion, argues that the U. C.C., far from requiring that conversion, *custodia legis* be applied to conditional vendors too, abrogates the whole doctrine.

The trial judge, upon considering this question so lacking in precise authority on the point, concluded that the basis for doctrine of conversion, *custodia legis* is that the title to the property involved is in the mortgagor and a mortgagee's replevin bond alone and without judgment confers only a right to possession and does not affect the title. And without title, a sale by the replevining party is a conversion, even if it is a foreclosure sale by a mortgagee. The trial court relied on Scott v. Standridge, 117 Okl. 111, 245 P. 591 (1926) and Federal Nat. Bank v. McDonald, 129 Okl. 75, 263 P. 105 (1927) for support for this proposition. Certain parts of these opinions do support a distinction based upon whether title is in the replevining party. In Scott, the Oklahoma Supreme Court reviewed the prior cases establishing *custodia legis* and in effect held that the property under bond in a replevin action conditioned on redelivery in the event that the replevining party fails, is in *custodia legis* the same as if actual possession was with an officer of the court. The court in Scott went on to say that no title to the property vests in the replevining mortgagee on its delivery to him, but it remains in the custody of the law and cannot pass even to a bona fide purchaser from plaintiff or be levied upon under attachment or execution. Implicit in the opinion is the reasoning that since title does not vest in a replevining party who holds the property in *custodia legis*, to sell the property is to convert it and no title passes to the purchaser.[3]

The McDonald case lends far less support for an application of the doctrine based upon where technical title lies, but the case of Tingley v. Smith, 181 Okl. 84, 72 P.2d 729, at 731 (1937) does appear to rely somewhat upon the whereabouts of title to find a conversion: "Since in such [replevin] cases the plaintiff [chattel mortgagee] does not have legal title to the property, his conversion thereof prior to the determination of the right to possession is a conversion of the defendant's property * * *."

Besides the previously cited cases, we have exhaustively researched the Okla-

---

2. Scott v. Standridge, 117 Okl. 111, 245 P. 591 (1926); Salisbury v. First Nat. Bank, 99 Okl. 138, 221 P. 444 (1923).

3. In dicta the court in Scott v. Standridge, 117 Okl. 111, 245 P. 591 (1926) concluded saying, "[I]f the plaintiff was without title, a sale by him pending the replevin action does not pass a good title to the purchaser."

homa cases dealing with conversion, *custodia legis* [4] and we have found not a single application of the doctrine to a conditional vendor. The cases are not entirely consistent in explicating the doctrine, nor are they clear in explaining why the doctrine has not been applied to a conditional vendor. Appellants have seized upon the lack of clarity in the state law to dispute the trial judge's distinction between a replevining chattel mortgagee and a replevining conditional vendor. Appellants suggest other explanations for the doctrine and advance other reasons why the Oklahoma Courts have not previously applied the doctrine to conditional vendors, with the conclusion that Oklahoma Courts would apply the doctrine to conditional vendors. It may well be that the Oklahoma Courts simply have had no occasion to consider a case in the posture of our case since pre-U.C.C. conditional vendors had significantly different rights compared to a chattel mortgagee and therefore conditional vendors rarely found it advantageous to replevin.[5] Or perhaps the different rights of a conditional vendor resulted in an absence of an appropriate party to recover for a conditional vendor's conversion,[6] and this accounts for why Oklahoma Courts have not applied conversion, *custodia legis* to conditional vendors as well as chattel mortgagees.

■ However, these explanations are pure speculation supported by nothing but surmise, and by no stretch of the imagination are they sufficient to find that the trial judge was clearly erroneous in his application of the state law in this diversity suit. In this regard, we repeat with emphasis our rule that in diversity cases where there is no direct state authority, we accept the trial judge's view of the state law unless it is clearly erroneous.[7] Since we cannot say that the trial judge was clearly erroneous in this case and since the law of Oklahoma is barren of any sound authority supporting an application of conversion, *custodia legis* to a conditional vendor, we have no grounds upon which we can reverse this case and extend the application of the principle to conditional vendors as well as to chattel mortgagees.

■ We are not convinced by appellants' syllogism that since conversion, *custodia legis* is applicable to a chattel mortgagee and since the U.C.C. has reduced a conditional vendor to a chattel mortgagee, consequently conversion, *custodia legis* should likewise be applied to a conditional vendor. While appellants' reasoning accounts for the change the U.C.C. made by diminishing the significance of title and granting the conditional vendor merely a security interest in the collateral, it does not account for other changes made by the U.C.C. which are inconsistent with an application of conversion, *custodia legis* to a conditional vendor. One such significant change

---

4. *E. g.* P. & E. Finance Co. v. Wooden, 205 Okl. 78, 235 P.2d 691 (1951); Rostykus v. Fidelity Finance Co., 203 Okl. 442, 223 P.2d 126 (1950); Federal Nat. Bank of Shawnee v. Lindsey, 172 Okl. 30, 43 P.2d 1036 (1935); Wilson Motor Co. v. Dunn, 129 Okl. 211, 264 P. 194 (1928); Mid-Continent Motor Securities Co. of Tulsa v. Art Harris Transfer, etc., 97 Okl. 139, 223 P. 130 (1924); Salisbury v. First Nat. Bank, 99 Okl. 138, 221 P. 444 (1923); Noble Bros. v. Ballew, 59 Okl. 90, 158 P. 906 (1916); Grossman Co. v. White, 52 Okl. 117, 152 P. 816 (1915); Bohannan v. Jennings, 31 Okl. 254, 121 P. 195 (1912); Farmers' State Bank v. Stephenson, 23 Okl. 695, 102 P. 992 (1909).

5. *See generally* Haubelt v. Bryan & Doyle, 171 Okl. 338, 43 P.2d 68 (1935).

6. *Compare* Selected Investments Corporation v. Anderson, 319 P.2d 588 (Okl. 1957) and Welles v. Acree Motor Co., 188 Okl. 173, 107 P.2d 175 (1940) *with* Tingley v. Smith, 181 Okl. 84, 72 P.2d 729, 731 (1937).

7. Equitable Fire and Marine Ins. Co. v. Allied Steel Construction Co., 421 F.2d 512 (10th Cir. 1970) (opinion filed Feb. 6, 1970); Fulton v. Coppco, Inc., 407 F.2d 611 (10th Cir. 1969); Continental Cas. Co. v. Fireman's Fund Ins. Co., 403 F.2d 291 (10th Cir. 1968); Scott v. Stocker, 380 F.2d 123 (10th Cir. 1967).

is that the protection accorded to debtors by the old doctrine of *custodia legis* is now accorded by the Uniform Commercial Code in 12A O.S. § 9–507. In other words § 9–507, which allows a debtor to question the "commercial reasonableness" of the sale on default made by the secured party, provides appellants with a remedy to litigate whether Brunswick's foreclosure sale reflects the fair market value of the equipment. Moreover, since § 9–507(1) provides for legal action prior to a secured party's disposition of the collateral, debtors such as appellants have a pre-sale remedy for restraining a creditor who in any fashion is not proceeding in accordance with the default provision of the U.C.C.

 In connection with why the U.C.C. is incompatible with the principle of conversion, *custodia legis*, we also hasten to point out that the principle applys to restrict the timing of a foreclosure sale after default. But the policy of the U.C.C. is to provide, flexibility in the disposition of the collateral, including the timing of the sale,[8] to produce the maximum amount from the sale of the collateral.[9] So too, § 9–207(3) is inconsistent with the application of conversion, *custodia legis* as it has been sometimes enunciated in Oklahoma cases.[10] Thus it is clear that for every change the Uniform Commercial Code has made in the status of the conditional vendor, parallel and compensating changes have been made in the status of the conditional vendee. In the light of the new remedy afforded by § 9–507 to conditional vendees such as appellants, there is no reason for extending the doctrine of conversion, *custodia legis* to a conditional vendor. We can only conclude that if the Oklahoma Supreme

Court were to consider extending the doctrine to a conditional vendor in the light of the Uniform Commercial Code, they would decline. Since appellants admit that Brunswick complied with the procedural requisites of the Uniform Commercial Code in conducting the default sale, the trial judge was correct in denying appellants' counterclaim.

 Furthermore, we find no merit in appellants' additional contention that under the recent Supreme Court case of Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) they have been the victims of a taking of property without the procedural due process required by the Fourteenth Amendment. Sniadach expressly was a unique case involving, "a specialized type of property presenting distinct problems in our economic system." That case involved wage garnishment without notice or hearing prior to judgment on a promissory note. It is not in the least comparable to the case here on appeal involving enforcement of a security interest. Appellants have contractually agreed that upon default, their creditor Brunswick "* * * may take immediate possession of said property [collateral] and for this purpose the Seller may enter the premises where said property may be and remove the same without notice or demand, and with or without legal process; thereupon all the rights and interests of the Buyer to and in said property shall terminate." Appellants admit that they were in default on the conditional sale, so they cannot now be heard to object to the default procedures they agreed to simply because Brunswick did utilize the legal process of replevin under bond.

Affirmed.

---

8. 12A O.S. § 9–504(3) provides: "Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be *as a unit or in parcels and at any time* and place and on any terms but every aspect of the disposition including the method, manner, *time,* place and terms must be

commercially reasonable." (Emphasis added)

9. 1 Coogan, Hogan and Vagts, Secured Transactions under the Uniform Commercial Code, § 8.04 [2]; 2 Gilmore, Security Interests in Personal Property, § 44.5 (1965).

10. *E. g.* Wilson Motor Co. v. Dunn, 129 Okl. 211, 264 P. 194 (1928).