336 F.Supp. 497 (1971)
RESOLUTE INSURANCE COMPANY, a Rhode Island Corporation, and E. L. Johnson, Plaintiffs,
v.
The SEVENTH JUDICIAL DISTRICT COURT OF OKLAHOMA COUNTY, STATE OF OKLAHOMA, et al., Defendants.
Civ. No. 69-305.
United States District Court, W. D. Oklahoma.
February 3, 1971.
*498 Simon B. Spradlin, Forest N. Simon, and O. B. Martin, Oklahoma City, Okl., for plaintiffs.
Curtis P. Harris, D. K. Cunningham, and Wm. L. Funk, Oklahoma City, Okl., G. T. Blankenship, Atty. Gen., and C. G. Engling, Asst. Atty. Gen., Oklahoma City, Okl., and James T. Farha and Patrick C. Ryan, Okl. Ins. Dept., Oklahoma City, Okl., for defendants.
Before HOLLOWAY, Circuit Judge, and LANGLEY and EUBANKS, District Judges.

MEMORANDUM OPINION
EUBANKS, District Judge.
This case was commenced by complaint filed on July 16, 1969, wherein Maryland National Insurance Company, Carl Brooks, Resolute Insurance Company and E. L. Johnson sought injunctive and declaratory relief against The Seventh Judicial District Court of Oklahoma County, Oklahoma, Bob Turner, Sheriff of Oklahoma County, Oklahoma, and Joe. B. Hunt, Insurance Commissioner of the State of Oklahoma. Therein it is alleged that Sections 1301 through 1340 of Title 59 of the Oklahoma Statutes (commonly known and hereafter referred to as the "Bail Bond Act") are unconstitutional in particulars *499 that will be mentioned later. Jurisdiction of this court was claimed under 28 U.S.C. § 1331 and a court of three judges was requested pursuant to 28 U. S.C. § 2281 et seq. The judge to whom the case was assigned initially declined to request the Chief Judge of the Circuit to form a three judge court because of his then view that plaintiffs had already litigated the issues in Maryland National Insurance Company v. District Court of Seventh Judicial District of Oklahoma County, Okl., 455 P.2d 690, and could not, (see England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440) after losing there, start anew at the District Court level but rather should appeal to the United States Supreme Court as authorized by 28 U.S.C. § 1257(2). After this preliminary announcement by the assigned judge the plaintiffs herein who were parties in the state court case withdrew from this case and appealed their state court action to the Supreme Court of the United States where the same was dismissed and/or certiorari denied, 396 U.S. 25, 90 S.Ct. 198, 24 L. Ed.2d 145. The remaining plaintiffs (who appeared as amicus curiae in the state court case) then asserted that they were injecting new issues that were not raised in the state court action so a three judge court was then requested and constituted.
By amended complaint filed on August 4, 1969, the Oklahoma Bail Bond Act is challenged as being violative of the provisions of the United States Constitution as follows:
(a) Seventh Amendment: "In suits at common law where the value of the controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."
(b) Fourteenth Amendment: "Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
(c) Violates the provisions of the United States Constitution against the Legislative Enactment of powers specifically conferred upon the judicial branch of the government.
(d) Is discriminatory, imposing a severe penalty on bail bond surety companies as opposed to surety bonds otherwise.
In briefs and argument plaintiffs also say that the Act violates the Oklahoma Constitution in that it fails to grant a jury trial before judgment forfeiting a bail bond but this issue was clearly decided for us in the state court case (see 455 P.2d 692-695) and we are mandated by Hartford Accident & Indemnity Company v. N. O. Nelson Mfg. Co., 291 U.S. 352, 54 S.Ct. 392, 78 L.Ed. 840 to adhere to that ruling.
Since the facts in this case are not disputed we will mention them only in connection with specific issues. We do mention that the reason for the delay in deciding this case is that on October 6, 1969, then counsel for plaintiffs advised this court that his clients were going out of the bail bond business and had decided to expend no more money in testing the constitutionality of the Bail Bond Act. The case was held in abeyance by the court with expectation of dismissal but plaintiffs later decided to proceed with the suit.
The principal argument of plaintiffs, who are licensed under the Bail Bond Act, is that the Act violates the due process clause of the Fourteenth Amendment to the United States Constitution in that it allows the Insurance Commissioner to cancel a license issued thereunder for non payment of a judgment of forfeiture that has not become final. In this connection it is pointed out that Section 1330 of the Act provides that "if there is a breach of the undertaking, (non appearance of the criminal defendant principal) the court before which the cause is pending shall declare the undertaking and any money that has been deposited as bail, forfeited and the proceeds thereof paid into the clerk of the court. In the case of a surety bondsman or professional bondsman the court shall immediately direct a copy of *500 said order and judgment of the forfeiture to the commissioner who shall give notice by mailing a copy of said order and judgment of forfeiture to the surety bondsman and his insuror or the professional bondsman and directing them to make a deposit to the commissioner of cash or other valuable security in the face amount of said forfeiture. Should the said deposits not be made to the commissioner within thirty days from the date of order of forfeiture, the commissioner shall: (a) In the case of a `surety bondsman' immediately cancel the license privilege and authorization of the insuror to do business within the State of Oklahoma and cancel the license of all of said insurers, surety bondsman agents or runners who are licensed by this act."
Plaintiff then directs our attention to Section 1332 of the Act which allows the bondsman 30 days to move to set aside the Order of Forfeiture and directs us to the fact that a license may be canceled under Section 1330 when deposit is not made even though the bondsman might be able to show in a later Section 1332 hearing that the failure of the criminal defendant principal to appear was because of his prior death, severe illness, incarceration at another place by the same authority or other justifiable reason. Plaintiffs say that in this regard there is no due process afforded them. They rely heavily on the holding in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349, where it was held that the Wisconsin garnishment statute was violative of the fourteenth amendment's due process provision because a prejudgment taking of wages was authorized. We think that the instant case is distinguishable from Sniadach. Therein the court said in pertinent part:
"Such summary procedure may well meet the requirements of due process in extraordinary situations. Cf. Fahey v. Mallonee, 332 U.S. 245, 253-254 [67 S.Ct. 1552, 1554-1556, 91 L.Ed. 2030]; Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 598-600 [70 S.Ct. 870, 872-873, 94 L.Ed. 1088]; Ownbey v. Morgan, 256 U.S. 94, 110-112 [41 S.Ct. 433, 437-438, 65 L.Ed. 837]; Coffin Bros. & Co. v. Bennett, 277 U.S. 29, 31 [48 S.Ct. 422, 423, 72 L.Ed. 768]. But in the present case no situation requiring special protection to a state or creditor interest is presented by the facts; . . ." Italics ours.
The cases cited by the high court in Sniadach where extraordinary situations justify summary procedure deserve mention. In Fahey v. Mallonee the court found no due process infirmity in Sec. 5(d) of the Home Owners Loan Act of 1933 which gave the Federal Home Loan Bank Administration the right to appoint a conservator, without notice or hearing, for any Federal Savings and Loan Association, whenever, in the opinion of the Administration, same was being conducted in an unlawful, unauthorized or unsafe manner. There the court reasoned that banking has long been regulated and closely supervised and the fact that hearings are held after the conservator is appointed instead of before does not render the act unconstitutional. We believe that the public interest also requires a close regulation of the bail bond business.
Although unrelated to the due process question we think it appropriate to quote elsewhere from Fahey to-wit:
This is a stockholder's derivative action in which plaintiffs sue only in the right of the Association. It is an elementary rule of constitutional law that one may not "retain the benefits of the Act while attacking the constitutionality of one of its important conditions." United States v. San Francisco, 310 U.S. 16, 29 [60 S.Ct. 749, 756, 84 L.Ed. 1050]. As formulated by Mr. Justice Brandeis, concurring in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 348 [56 S.Ct. 466, 483, 80 L.Ed. 688], "The Court will not pass upon the constitutionality of a statute at the instance of one who has availed himself of its benefits."

*501 In the name and right of the Association it is now being asked that the Act under which it has its existence be struck down in important particulars, hardly severable from those provisions which grant its right to exist. Plaintiffs challenge the constitutional validity of the only provision under which proceedings may be taken to liquidate or conserve the Association for the protection of its members and the public. If it can hold the charter that it obtained under this Act and strike down the provision for terminating its powers or conserving its assets, it may perpetually go on, notwithstanding any abuses which its management may perpetrate. It would be intolerable that the Congress should endow an association with the right to conduct a public banking business on certain limitations and that the Court at the behest of those who took advantage from the privilege should remove the limitations intended for public protection. It would be difficult to imagine a more appropriate situation in which to apply the doctrine that one who utilizes an Act to gain advantages of corporate existence is estopped from questioning the validity of its vital conditions. We hold that plaintiffs are estopped, as the Association would be, from challenging the provisions of the Act which authorize the Board to prescribe the terms and conditions upon which a conservator may be named.
In this case plaintiffs are licensed under the Bail Bond Act and were receiving the benefits thereunder when this suit was filed. At the hearing on the merits we learned that plaintiffs had gone out of the bail bond business prior to February 1, 1970, but they are still licensed and conceivably could reenter same in the future.
The second "special situation" case referred to in Sniadach was Ewing v. Mytinger & Casselberry. There the court found no due process defects in a section of the Federal Food, Drug, and Cosmetic Act that permitted the Administrator, without a hearing, to seize articles which he believes to be misbranded, so long as an opportunity for hearing is afforded at some stage.
The last "extraordinary situation" case cited in Sniadach was Coffin Bros. v. Bennett. There the court found that the Banking Act of Georgia which permitted the superintendent of Banks, when acting as a receiver of a bank, to require stockholders to pay to him 100 per centum of the par value of their stock for the benefit of creditors and upon failure of the stockholder so to do to issue execution thereon all prior to any hearing, did not do violence to the due process clause. We quote from that case the following:
The objection urged by the plaintiffs in error seems to be that this section purports to authorize an execution and the creation of a lien at the beginning, before and without any judicial proceeding. But the stockholders are allowed to raise and try every possible defense by an affidavit of illegality, which, as said by the Supreme Court of Georgia, makes the so called execution "a mode only of commencing against them suits to enforce their statutory liability to depositors." A reasonable opportunity to be heard and to present the defence is given and if a defence is presented the execution is the result of a trial in court. The Fourteenth Amendment is not concerned with the form. Missouri ex rel. Hurwitz v. North, 271 U.S. 40, 42 [46 S.Ct. 384, 70 L.Ed. 818]. The fact that the execution is issued in the first instance by an agent of the State but not from a Court, followed as it is by personal notice and a right to take the case into court, is a familiar method in Georgia and is open to no objection. Martin v. Bennett [D.C.] 291 F. 626, 630, 631. If the debtor does not demand a trial the execution does not need the sanction of a judgment (see Murray v. Hoboken Land & Improvement Co., 18 How. 272 [15 L.Ed. 372]); the plaintiffs in error by becoming stockholders had assumed *502 the liability on which they are to be held. Bernheimer v. Converse, 206 U.S. 516, 529 [27 S.Ct. 755, 51 L.Ed. 1163].
As to the lien, nothing is more common than to allow parties alleging themselves to be creditors to establish in advance by attachment a lien dependent for its effect upon the result of the suit. We see nothing in this case that requires further argument to show that the decision below was right.
Here again, we mention that plaintiffs became licensed under the Bail Bond Act with full knowledge of its provisions.
The Court of Appeals for this circuit, speaking through Judge Hill recently said in Brunswick Corp. v. J & P Inc., 424 F.2d 100:
Furthermore, we find no merit in appellants' additional contention that under the recent Supreme Court case of Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) they have been the victims of a taking of property without the procedural due process required by the Fourteenth Amendment. Sniadach expressly was a unique case involving, "a specialized type of property presenting distinct problems in our economic system." The case involved wage garnishment without notice or hearing prior to judgment on a promissory note. It is not in the least comparable to the case here on appeal involving enforcement of a security interest. Appellants have contractually agreed that upon default, their creditor Brunswick "* * * may take immediate possession of said property [collateral] and for this purpose the Seller may enter the premises where said property may be and remove the same without notice or demand, and with or without legal process; thereupon all the rights and interests of the Buyer to and in said property shall terminate." Appellants admit that they were in default on the conditional sale, so they cannot now be heard to object to the default procedures they agreed to simply because Brunswick did utilize the legal process of replevin under bond.
The position of a surety under the Bail Bond Act is not unlike that of the conditional vendee in Brunswick insofar as the contractual agreement is concerned.
Furthermore, the Bail Bond Act does not require a notified bondsman to put up the face amount of the bail bond in cash but allows other valuable security to be posted. Additionally when the commissioner orders the posting with him of money or security in the face amount of a forfeited bond and the order of forfeiture is later set aside in the District Court the commissioner, pursuant to Section 1330(b), restores to the bondsman the posting. As an added safeguard any action taken by the commissioner is subject to review through the Oklahoma Administrative Procedures Act.
Finally, as regards the due process question we can detect no substantial difference in the procedure outlined in the Bail Bond Act from those long utilized in the Federal courts pursuant to Federal Rule of Criminal Procedure No. 46. This Rule has the approval of the Judicial Conference and the Congress. Who would say that it violates due process?
The public interest requires that persons accused of criminal acts be promptly brought to trial. The Bail Bond Act is designed to insure the attendance of the defendants at his trial. The summary procedures against the bondsman provided for in those statutes where a defendant fails to appear for trial are in the public interest and are fully justified and do no violence to the due process clause.
Plaintiffs further allege and argue that the Bail Bond Act contravenes the provisions of the Seventh Amendment to the Constitution of the United States because it fails to grant a jury trial to a bondsman before judgment *503 of forfeiture. The Oklahoma Supreme Court passed squarely on this issue in Maryland National Insurance Co. v. District Court, supra, and while the cases may not be in accord as to whether that ruling is conclusively binding upon a Federal District Court we have no difficulty in saying that we feel completely comfortable in following the well written opinion of the able Justice Jackson in that case.
Accordingly we hold that the Oklahoma Bail Bond Act does not violate the United States Constitution because of the absence of a jury trial provision.
The plaintiffs have alleged, but give only cursory treatment thereto in briefs and argument, that the Bail Bond Act violates the U. S. Constitution in that it is discriminatory, imposing a severe penalty on bail bond surety companies as opposed to other surety bonds. We find no merit in that contention for the Act provides uniform, equal and non-discriminatory treatment for all who enter into the bail bond business which is a voluntary thing.
Next plaintiffs say that the Act is void because Sec. 1332(1) requires the judge, when a motion to set aside an order of forfeiture is filed, to hear said motion within 30 days and said proviso, argues plaintiffs, amounts to a legislative encroachment upon the judicial domain. Although there is nothing in the Act that precludes the judge from continuing the hearing of such motion we are in agreement that this part of Sec. 1332 violates the Oklahoma Constitution and we have ancillary jurisdiction to so hold. The cases we have examined on this point seem to uniformly hold that a statute undertaking to require judicial action within fixed periods of time is an unconstitutional legislative interference with judicial functions. See Waite v. Burgess, 69 Nev. 230, 245 P.2d 994; State ex rel. Kostas v. Johnson, 224 Ind. 540, 69 N.E.2d 592; Atchison, Topeka & Santa Fe v. Long, 122 Okl. 86, 251 P. 486; McConnell v. State, 227 Ark. 988, 302 S.W.2d 805 and Riglander v. Star Co., 98 App.Div. 101, 90 N.Y.S. 772. But this one invalid clause in the Bail Bond Act is severable from the remaining valid provisions thereof so we may not strike down the whole Act.
In argument plaintiffs make brief complaint that officials of Oklahoma County, Oklahoma, have, since about February 1, 1970, required as a condition precedent to the acceptance of any bail bond that the bondsman waive the ten day notice of the time and place for appearance of the criminal defendant principal which notice is required by the last sentence of Section 1330(b) of the Act. We note in passing that these plaintiffs had ceased to write bonds before that practice was instituted. Also this Court is concerned with the constitutionality of the Act not whether there is an unconstitutional application thereof.
Finally, plaintiffs argue that in some counties in Oklahoma the District Judges require a supersedeas bond on appeal from orders overruling motions to set aside bond forfeitures even when the face amount of the bond has been posted with the commissioner. Again we say that questions relating to the improper application of the Act is not our concern. The most that can be said of these two issues last mentioned is that they present no substantial Federal constitutional question.
For the foregoing reasons the prayer of plaintiffs for an order of this Court declaring the Oklahoma Bail Bond Act unconstitutional is, with the minor exception herein noted, denied. Their prayer for a permanent injunction is refused. The preliminary injunction issued herein on August 21, 1969, is vacated with the single judge to whom this case was assigned to retain jurisdiction over any suit that may be filed upon the surety bonds posted herein in connection with the preliminary injunction.