Martin Evans, J.
Plaintiff, to obtain a provisional remedy prior to the commencement of an action in replevin, has presented to the court a proposed order directing a marshal to seize, without prior notice, certain described property in the possession of defendants, and to enter into any premises for that purpose.
In support of the proposed order the plaintiff has submitted a complaint and affidavit, from which it appears that the defendant and his wife purchased, on an installment basis, a 5-piece bedroom set, mattress and spring, and a TV set from the plaintiff under two separate contracts dated respectively January 16, 1971 and November 2, 1970; that no payments have been made since February, 1971 and plaintiff claims that it is entitled to possession under the installment contracts.
Prior to the recent amendment of CPLR article 71 (effected by L. 1971, ch. 1051, eff. July 2,1971), it has been the common prac *155 tice in New York that no application to the court was necessary in order to permit a plaintiff in replevin to obtain the services of a sheriff or marshal to seize chattels claimed to be owned by plaintiff. When the papers were presented to the court, it was merely for the approval of the form and sufficiency of the surety on the replevin bond, with no examination by the court of the basis of the replevin order directed to the sheriff or marshal.
No prior notice to the persons holding the chattel was necessary, and the seizure was deemed to be merely a preliminary step in the replevin action. Historically, the action of replevin only determines the right to possession of a chattel; the preliminary seizure was conceptually designed only to protect the property pending the result of the trial of title or possession.
In the course of the development of credit installment sales of household goods, the uses and purposes of the replevin action were often distorted, with the threat of seizure being used to compel the debtor to pay the balance remaining despite the possibility of the existence of defenses to such payment. In many cases, the actual seizure was followed by a resale of the property by the creditor, with no return being filed by the plaintiff, sheriff or marshal and no further judicial proceedings being taken by the plaintiff to complete the action to determine title or the right to possession.
In practice then, replevin was distorted into a mere collection device, with the sheriff or marshal becoming an arm of the creditor. Most debtors, under these circumstances, were either too poor, or too ignorant to enforce their rights. As a result, great hardships were all too often imposed upon persons who were the least equipped to withstand such dire circumstances.
Breaking into premises without notice, with the full majesty of the law behind the act, and seizing or removing property is indeed a harsh remedy, particularly in cases where the resulting hardship to the alleged debtor is far greater than the benefit to the one claiming the right to immediate possession.
In Sniadach v. Family Finance Corp. (395 U. S. 337) the court recognized that the provisional remedy of wage garnishment presented a distinct problem in our economic system, and, finding that the case presented no situation requiring special protection to a State or creditor interest, held that the procedure invoked did not satisfy the procedural due process mandated by the Fourteenth Amendment. (All references to the Constitution are to the Constitution of the United States, and not to that of the State of New York.)
A three-Judge District Court, in Laprease v. Raymours Furniture Co. (315 F. Supp. 716) held that furniture of the type *156 involved in the instant application was of the same nature as the property in Sniadach; i.e., a specialized type of property the taking of which would be likely to cause great hardship. This merely recognized what had long been the public policy of New York, as shown by CPLR 5205 (subd. [a], par. 5), making, inter alia, household furniture exempt from application to the satisfaction of judgments.
The court in Laprease held additionally that CPLR article 71, as applied, violated not only the requirements of procedural due process mandated by the Fourteenth Amendment, but also the prohibition imposed by the Fourth Amendment against unreasonable search and seizure, in that article 71 allowed and required a sheriff or marshal to enter premises in any manner and at any time, with such force as might be required in order to effectuate the seizure; and all without a showing of probable cause that this was required in order to protect the chattels pending the determination of the trial of title or possession.
There is a distinction between the type of property, the seizure of which will likely cause great personal hardship, and commercial or industrial property. This distinction was observed in Brunswick Corp. v. J & P, Inc. (424 F. 2d 100) where the court, considering replevin on commercial property which involved the enforcement of a security interest, and contractual provisions permitting the creditor to enter and seize property, distinguished that case from Sniadach. This was also recognized by the court in Laprease, which, referring to the Brunswick case, distinguished it on that basis.
Wheeler v. Adams Co. (322 F. Supp. 645) was an action for an order restraining enforcement of replevin procedures of the People’s Court of Baltimore City, in Baltimore, Maryland. (Additional defendants included various Judges, including the Chief Judge of that court.) The procedures were attacked on the ground that they were violative of the Fourth and Fourteenth Amendments. Affidavits filed by various defendant Judges showed that the practice of the court was that no order of replevin would be signed unless the party seeking the writ first appeared personally before the Judge and made a prima facie showing, satisfactory to the Judge, that he was entitled to the order. In addition, the Judge made such inquiry as he deemed necessary to determine the value of the chattel, on which the bond was to be based. Officers executing the writ were directed not to execute the order if the defendant showed some evidence of a continued right to possession.
Procedures were also available in the People’s Court for an expedited trial for those persons who claimed a meritorious *157 defense but were unable to obtain a bond to secure the return of the property, by reason of their poverty.
The District Court held that the procedures, on their face, met the constitutional standards required to be applied.
(As a matter of interest, it should be noted that in the Civil Court of the City of New York, following the decision in Laprease [supra], the Administrative Judge of the court, aware of the constitutional requirements, and prior to the legislative changes which became effective on July 2,1971, directed that all applications for ex parte replevy orders be submitted to a Judge for review and signature.)
Santiago v. McElroy (319 F. Supp. 284) was an action to declare the levy and sale provisions of Pennsylvania (under 68 Pa. Stat., §§ 250.302-313) unconstitutional. These provisions entitled a landlord, who claimed a debt due for unpaid rent, to have all nonexempt property of the tenant distrained and sold to satisfy the claimed debt. The three-Judge District Court, convened to hear the case, held in a well-reasoned opinion that these provisions, which were not based on any factual situation requiring special protection to State or creditor interests, violated the constitutional rights of defendants to freedom from unreasonable searches and seizures without notice or an opportunity to defend.
The court, considering the type of property involved, also held that despite the limitation of the distraint and sale to nonexempt property, the exemption was ‘ ‘ not sufficiently generous to lessen the impact of the loss in a substantial manner.” (p. 294).
The court also considered the argument that the tenants had, in their leases, waived their right to complain, but stated, at page 294 of their opinion: ‘1 However, confronted as we are with an adhesion contract, we conclude that equity does not require that we close our ears to plaintiffs’ claim that they are harmed by the statute.”
It was in the light of these cases, and in consideration of the problems of the poor and ignorant persons who were frequently victimized by unfair collection practices, that the Legislature of our State amended CPLR article 71. In pertinent part, the present statute reads as follows:
‘ ‘ Affidavit. The affidavit shall clearly identify the chattel to be seized and shall state * * * if the plaintiff seeks the inclusion in the order of seizure of a provision authorizing the sheriff to break open, enter and search for the chattel in the place where the chattel may be, facts sufficient under the due process of law requirements of the fourteenth amendment to the consti *158 tntion of the United States to authorize the inclusion in the order of such a provision. ’ ’ (CPLR 7102, subd. [c], par. 5.)
“ Order of seizure. 1. Upon presentation of the affidavit and undertaking and upon such terms as may be required to conform to the due process of law requirements of the fourteenth amendment to the constitution of the United States, the court shall grant an order directing the sheriff of any county where the chattel is found to seize the chattel described in the affidavit and including, if the court so directs, a provision that, if the chattel is not delivered to the sheriff, he may break open, enter and search for the chattel in the place where the chattel may be.
“2. If the order of seizure does not include the provision permitted by paragraph one of this subdivision, the court shall grant a restraining order that the chattel shall not be removed from the state if it is a vehicle, aircraft or vessel or, otherwise, from its location, transferred, sold, pledged, assigned or otherwise disposed of or permitted to become subject to a security interest or lien until further order of the court. Unless the court otherwise directs, the restraining order does not prohibit a disposition of the chattel to the plaintiff. Disobedience of the order may be punished as a contempt of court. ’’ (CPLR 7102, subd. [d].)
The provisions of CPLR 7102 (subd. [c], par. 5) relating to seizure with or without breaking or entering are obviously designed to make certain that there is compliance with the provisions of the Fourth Amendment, even though this is not specifically mentioned by number, since this amendment is imposed upon the States by virtue of the Fourteenth Amendment. (There is no purpose, in this discussion, of the abstract consideration of whether the Fourth, or other amendments are directly applicable to the States, without the Fourteenth Amendment.)
That the requirements of the Fourth Amendment apply to civil cases is clear. In Camara v. Municipal Ct. (387 U. S. 523 [1967]) the Supreme Court held that the basic purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasion by governmental officials. That this also applies to invasion of business establishments has been shown by See v. City of Seattle (387 U. S. 541 [1967]). (Cf. Wyman v. James, 400 U. S. 309 [1971].)
The ‘ ‘ facts sufficient ’ ’ must show probable cause. The ‘ ‘ probable cause ’ ’ required by the Fourth Amendment, as applied to a civil case, to be sufficient to allow the violation of the sanctity of home or office to be rudely violated by an agent of our government upon the order of a judicial officer, must at the very least include a showing that the property is on the premises claimed; *159 that plaintiff has a clear and undisputed right to it (cf. Auto Brokerage Co. v. Ullrich, 102 N. J. L. 341, where a defendant rescinded a purchase contract on the ground of fraud and was held entitled to retain possession until the determination of that claim despite a replevin action brought by the assignee of the seller); and facts sufficient to show that the seizure is necessary for the protection of the property during the pendency of the replevin action, or that the interest of the plaintiff in obtaining the use of the property during the action is greater than the interest of the defendant in this interim use. By parity of reasoning, facts sufficient to show the necessity of the interim protection of the property should be sufficient to result in the conclusions required by the statute permitting attachment (CPLB, art. 62).
The requirements of CPLB 7102 (subd. [d], par. 1) pertain to what is commonly known as “procedural due process”; i.e., Fifth and Fourteenth Amendment rights. This includes, in the usual case, notice of the application, and an opportunity to be heard prior to the granting of an order which has the effect of deprivation of property. (The temporary injunction permitted by CPLB 7102, subd. [d], par. 2 does not appear to be such an interference with property as to require prior notice, but there may be circumstances which, indeed create such a requirement in unusual cases.)
The use of the words “ due process ” does not import a fixed, definitive procedure without flexibility from case to case. ‘ ‘ The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.” (Cafeteria Workers v. McElroy, 367 U. S. 886, 895.)
It has been held that in order to decide in a given case which procedures due process required, a court must carefully determine and deliberately adjust the nature of the private interests affected and the governmental interest involved. (See Goldberg v. Kelly, 397 U. S. 254; Zemel v. Rusk, 381 U. S. 1, 16; Wasson v. Trowbridge, 382 F. 2d 807, 811.)
The governmental interest may be a direct interest of the State, or its interest may be that of the promotion of commerce, the extension of credit, the assurances that debts will be paid and that creditors will be protected. (See 68 Mich. L. Rev., 986, 996-997, where it is noted that ‘1 The public interest in ensuring the collectibility of debts is evidenced by the many statutes and rules providing creditors’ remedies and by the court facilities and personnel provided by public funds to enforce creditors’ claims against their debtors.”)
There are indeed many cases in which surprise and seizure without notice or hearing is necessary to protect the interests of *160 a plaintiff. This is not only recognized by the provisions permitting attachment prior to the institution of suit in our State (see CPLR 6201), but also by the Supreme Court of the United States in Sniadach (supra) at page 339, where the court stated, “ But in the present case no situation requiring special protection to a state or creditor interest is presented by the facts ”. (See, also, Wheeler v. Adams Co., supra, at page 647.)
Although there are cases where the right of a debtor to be free from an unreasonable search and seizure, to notice, or to an opportunity to be heard may be waived by contract, see Brunswick Corp. v. J & P, Inc. (supra), the existence of such a waiver in a typical consumer contract of adhesion is without such effect. (Santiago v. McElroy, supra.)
In Blair v. Pitchess (5 Cal. 3d 258 [July 1,1971]) the Supreme Court of the State of California, sitting in banc, had before it an appeal from a judgment of the trial court which granted an injunction against the enforcement of the California claim and delivery law; a law similar in purpose and effect to CPLR article 71. Referring to the claim by the defendants of a waiver of Fourth and Fourteenth Amendment rights by the plaintiff and by others similarly situated, the court said, in a unanimous opinion (pp. 275-276):
“ Defendants also contend that waiver of Fourth Amendment rights arises from the terms of the retained title sales agreements and collateral security agreements normally involved in claim and delivery cases. Numerous examples of such contracts were attached as exhibits to the declarations in opposition to the motion for summary judgment. The majority of these contracts contain a clause which purports to give the seller or creditor authority to enter any premises and repossess the goods sold.
‘ ‘ Such provisions, however, cannot be used to justify defendants’ actions. In the first place * * * consent is given only to entry by the seller or creditor — not to entry by government officials, (n. 9 Only one of the contracts attached as exhibits to the declarations in opposition to the motion for summary judgment contains a clause purporting to give consent to intrusions by government officials.) By granting one person permission to enter his house, the occupant does not waive his Fourth Amendment rights as to intrusions by all others. Secondly, while we need not pass upon the validity of the consent purportedly obtained under the contracts filed in this case, we cannot refrain from observing that most of those contracts appear to be adhesion contracts, the terms of which are specified by the seller or lender. 1 The weaker party, in need of the goods or services, *161 is frequently not in a position to shop around for better terms, either because the author of the standard contract has a monopoly (natural or artificial) or because all competitors use the same clauses. His contractual intention is but a subjection more or less voluntary to terms dictated by the stronger party; terms whose consequences are often understood only in a vague way, if at all.’ (Kessler, Contracts of Adhesion — Some Thoughts About Freedom of Contract [1943] 43 Col. L. Rev. 629, 632.)
‘ ‘ For substantially the same reason that consent is ineffective to waive Fourth Amendment rights if made under the intimidation implicit in the presence of a uniformed officer of the law (Bumper v. North Carolina, supra, 391 U. S. 543, 548-550) or explicit in threats of reprisal (Parrish v. Civil Service Commission, supra, 66 Cal. 2d 260, 268-270), a consent obtained in such a contract of adhesion is ineffective to waive the constitutional protections against unreasonable searches and seizures.”
Further, referring to procedural due process, the right to notice and the opportunity to be heard, the court said (5 Cal. 3d 258, 281): “ We are faced again, however, with the contention that in most cases the alleged debtor has contractually waived his constitutional protections. Defendants claim that the clause, adverted to before, which is contained in most retained title sales contracts and which purports to give the seller authority to enter and repossess upon default operates to waive the buyer’s due process rights. (See Brunswick Corporation v. J & P, Inc., supra, 424 F. 2d 100, 105; Fuentes v. Faircloth, supra, 317 F. Supp. 954.) For the reasons stated previously in our consideration of whether such clauses operate to waive the alleged debtors’ Fourth Amendment rights, we hold that the mere fact that such clauses are enacted in many cases cannot render constitutional the claim and delivery law, which deprives alleged debtors of their right to due process whether or not such a purported waiver has been signed. (See Swarb v. Lennox, supra, 314 F. Supp. 1091).”
In view of these cases and the recent statutory amendment, at the time the proposed order in this case was presented to the court by an agent of the plaintiff, the court suggested to the agent that, if he so desired, he could make further statements under oath on a stenographic record or by further affidavit, to present any further facts which might justify either an order to the sheriff or marshal to break and enter the premises or to show why the order should be signed without notice to the defendant.
Although several oral statements were made, not under oath, a further affidavit was presented which did not include most of *162 those oral statements, and which merely claimed that in a conversation with defendants the affiant was advised that defendants intend to return to Puerto Rico.
The court does not consider this statement, which disclosed neither the date when it was made, the circumstances under which it was made nor the date when defendants propose to exercise their vague intention, sufficient to warrant the granting of the summary remedy of seizure without notice in this case.
The application by plaintiff clearly presents the possibility of the type of hardship envisioned not only by our exemption statute (CPLR 5205, subd. [a], par. 5) but in Laprease v. Haymows Furniture Co. (supra). The supporting papers, which demonstrate arithmetical miscalculations in favor of the plaintiff and to the detriment of the defendant, indicate that the defendant is a person who may be unable to comprehend his rights.
However, plaintiff has shown, prima facie, that it has not been paid. If there are reasons for this it will be incumbent upon defendant to show them.
The application is, therefore, granted to the extent that plaintiff is directed, within 10 days of the date of this opinion and decision, to serve upon the defendants copies of plaintiff’s application and supporting papers and a copy of this decision, together with a notice setting the application for a hearing at Special Term, Part II, of this court at 9:30 a.m. on a date certain to be fixed by the plaintiff not less than 7 days nor more than 14 days from the date of such service; and the defendants are, until the further order of this court, enjoined and restrained from removing the furniture and the TV set referred to in plaintiff’s complaint from their present location, and from transferring, selling, assigning or otherwise disposing of the said property, and from permitting it to be subjected to any security interest or lien.