**UNITED STATES of America, Appellee,**

v.

**William BRAINER, Appellant.**

**Eugene Gressman, Esq., Amicus Curiae.**

**No. 81–5159.**

United States Court of Appeals,
Fourth Circuit.

Argued June 10, 1982.
Decided Oct. 19, 1982.

See also D.C., 515 F.Supp. 627.

Gerald A. Kroop, Baltimore, Md. (Barbara Mello, Baltimore, Md., on brief), for appellant.

J. Frederick Motz, U. S. Atty., Baltimore, Md. (Steven A. Allen, Asst. U. S. Atty., Baltimore, Md., on brief), for appellee.

Eugene Gressman, School of Law, University of North Carolina, Chapel Hill, N. C., for amicus curiae.

Before WINTER, Chief Judge, PHILLIPS and MURNAGHAN, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

This case requires us to rule on the constitutionality of an aspect of the Speedy Trial Act of 1972, as amended, 18 U.S.C. §§ 3161 *et seq.* The district court held the Act invalid as "an unconstitutional en-

croachment upon the Judiciary." *United States v. Brainer,* 515 F.Supp. 627, 630 (D.Md.1981).[1] It therefore refused to dismiss the indictment against defendant even though trial was delayed beyond the period permitted by the Act. Having been convicted, defendant appeals. Because we find that the Act is constitutional and defendant's trial was in violation thereof, we reverse and remand for further proceedings.

## I.

On July 2, 1980, defendant William Brainer and three other persons were indicted for conspiracy to possess with intent to distribute marijuana and methaqualone in violation of 21 U.S.C. § 846. His codefendants were also charged with other offenses; one was convicted of a substantive offense on a plea of guilty, and the other two were acquitted.

At the time of disposition of the codefendants' cases, Brainer was a fugitive from justice. He was arrested in the State of Washington on January 19, 1981, and brought before the district court in the District of Maryland on January 30, 1981. The latest date on which Brainer could have been tried consistently with the Speedy Trial Act was April 10, 1981 (assuming the absence of excludable time).[2] Although apprised of this deadline, the district court scheduled the trial for April 20, 1981.

Before the trial began, Brainer moved to dismiss his indictment for lack of a speedy trial.[3] Encouraged perhaps by the district court's expressed view in an earlier opinion,[4] the government then took the position that the Act was unconstitutional. Upholding that position, the district court denied defendant's motion and held that the strict time limits and mandatory dismissal sanction of the Act infringe on the constitutionally autonomous power of the federal judiciary and offend the constitutional doctrine of the separation of powers. Defendant was then convicted in a bench trial on a stipulated statement of facts and sentenced to two years' probation pursuant to the Federal Youth Correction Act as extended by the Young Adult Offenders Act, 18 U.S.C. §§ 5010(a) and 4216. This appeal ensued.

On appeal, the government joined defendant in urging that the Act is constitutional. Confronted with this anomaly, we appointed an amicus curiae to argue in support of the district court's judgment.[5] The amicus briefed the case and appeared at a second oral argument, at which the government and defendant were also heard.

## II.

Before reaching the constitutional question at hand, we must consider jurisdictional issues raised by the government's

---

1. The district court's constitutional ruling was foreshadowed in *United States v. Martinez,* 538 F.2d 921 (2 Cir. 1976), in which retired Justice Clark, sitting as a circuit judge, suggested that the Speedy Trial Act violates the separation of powers principle. *Id.* at 923 & n.4 (alternative holding).

   The district court's opinion in the present case substantially restates a previous opinion in which it declared the Speedy Trial Act unconstitutional. *See United States v. Howard,* 440 F.Supp. 1106, 1109–13 (D.Md.1977), *aff'd on other grounds,* 590 F.2d 564 (4 Cir.), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1547, 59 L.Ed.2d 795 (1979). *Howard* involved multiple defendants, and the court's constitutional ruling involved only one of them. Because the pertinent defendant was not a party to the appeal, a panel of this court declined to consider the constitutionality of the Act. 590 F.2d at 568 n.4.

2. By the provisions of 18 U.S.C. § 3161(c)(1), Brainer was required to be tried within seventy days from the later of (a) the date on which the indictment was made public or (b) the date of his first appearance before a judicial officer of the court in which the charge was pending. April 10, 1981, was the date falling seventy days after defendant's appearance in the district court on January 30, 1981.

3. 18 U.S.C. § 3162(a)(2) prescribes dismissal of the indictment for a violation of § 3161(c)(1). The district court is vested with discretion under certain prescribed standards to dismiss with or without prejudice.

4. *See* note 1 *supra.*

5. Professor Eugene Gressman kindly agreed to serve as amicus. We express our appreciation for his valuable aid to the court.

change of position on appeal: namely, whether that development moots the case or whether the lack of adversariness in the parties' legal arguments on appeal deprives this suit of the status of a case or controversy within the meaning of Article III of the Constitution. Although neither the parties nor the amicus question our power to decide this case, we must make an independent determination of our jurisdiction whenever its existence may be in doubt.

There is no question but that the parties litigated a case or controversy as adversaries in the district court. Defendant sought to avoid an adjudication of guilt and imposition of sentence by having his indictment dismissed for violation of the Act, and the government sought to hold him to the charges by asserting the invalidity of the statute on which he relied. The district court decided the issue on the merits, struck down the Act, and proceeded to convict and sentence defendant in spite of the fact that the Act mandated dismissal.

We acquired jurisdiction when Brainer filed his notice of appeal. At that critical juncture, the parties were definitely embroiled in a pressing controversy which in no sense had become moot: defendant was still opposing criminal charges, and the government was resting on its victory. It had taken no steps to relieve defendant of the judgment of conviction or of the restrictions imposed on him by the sentence of probation.

Under the circumstances, we think it clear that the government's subsequent change of position neither mooted the case nor otherwise transformed it into something less than a case or controversy. To be sure, the arguments of counsel are no longer mutually adverse; the government now concedes the correctness of defendant's view of the law and unites in his request that the judgment against him be reversed. But the Supreme Court has said that no confession of error by the government respecting a criminal conviction shall "relieve this Court of the performance of the judicial function ... to examine independently the errors confessed." *Young v. United States,* 315 U.S. 257, 258–59, 62 S.Ct. 510, 511–512, 86 L.Ed. 832 (1941). *See also Casey v. United States,* 343 U.S. 808, 809–10, 72 S.Ct. 999, 1000, 96 L.Ed. 1317 (1952) (Douglas, J., dissenting); *Senior v. Braden,* 295 U.S. 422, 440, 55 S.Ct. 800, 806, 79 L.Ed. 1520 (1935) (Stone, J., dissenting).

When the government confesses error in the Supreme Court, and thus abandons a position taken in a lower court, the Court commonly appoints an amicus to assert the abandoned cause. *See, e.g., Goldsboro Christian Schools v. United States,* 456 U.S. 922, 102 S.Ct. 1964, 72 L.Ed.2d 437 (1982); *Brown v. Hartlage,* 454 U.S. 936, 102 S.Ct. 471, 70 L.Ed.2d 245 (1981); *Granville-Smith v. Granville-Smith,* 349 U.S. 1, 4, 75 S.Ct. 553, 555, 99 L.Ed. 773 (1955). We have followed that procedure here. The necessary implication of the Supreme Court's practice is that a lawsuit neither becomes moot nor loses the adversariness essential to a case or controversy merely because one party, on appeal, endorses its adversary's view of the law.

Having determined that we have jurisdiction to proceed, we see no way of avoiding the constitutional issue on which this case turns. The district court, at the government's urging, squarely ruled the Act unconstitutional. The judge who so ruled can be expected to adhere to that ruling in future cases unless we instruct otherwise. *See* note 1 *supra.* Apparently, however, his view has not been endorsed by other judges of his district. As a result, there is a serious risk of inconsistency in the administration of criminal justice in that district. Future cases, however, are unlikely to present the issue in a better posture because, unless the government reverses its position a second time, it will always find itself in agreement with those defendants who argue that the Act is constitutional and that trials held in clear violation of the Act are invalid. In our view, a constitutional determination is necessary to the disposition of the present case and the ends of justice would not be served by deferring the issue for another day.

We, of course, take notice that our brother who concurs specially would decide the case on the very narrow ground that dismissal of the indictment is required because of the violation of Local Rule 30(4)(a) of the District of Maryland which, with exceptions inapplicable here, sets a seventy-day limit to commence the trial of criminal cases. He is of the view that the Maryland district judges have independently concluded to set trial time limits for the administration of criminal justice in the District of Maryland which are in concordance with the standards of the Speedy Trial Act. Although fully cognizant of our obligation not to reach out to decide constitutional questions when cases can be terminated on non-constitutional grounds, we are unable to accept his thesis. Maryland's Local Rule 30 recites that it is adopted "[p]ursuant to the requirements of Rule 50(b) of the Federal Rules of Criminal Procedure, the Speedy Trial Act ... and the Federal Juvenile Delinquency Act ...." Since Rule 50(b) is merely a directive to conduct studies for improvement in the administration of criminal justice and to comply with the Speedy Trial Act and since defendant in this case is not a juvenile, it is manifest that Local Rule 30, so far as it applies to defendant, is one which was adopted by the district court under the authority of the Act. If the rule was violated it is equally clear that the question of the constitutional validity of the Act is raised.

The clearest indication of the necessity of deciding the constitutional issue is found in the sanctions provisions of Local Rule 30. Section 10(a) states:

> Dismissal. Failure to comply with the time limits prescribed herein shall not require dismissal of the prosecution, except as required by 18 U.S.C. sections 3162, 3164, 5036, or the Interstate Agreement on Detainers. The court retains the power to dismiss a case for unnecessary

delay pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure.[6]

From this language we think it apparent that the only mandatory sanction for violation of the time limitation requirements of the rule is that contained in the Act, thus again bringing into issue the constitutional validity of the Act. An examination of the antecedents of present Local Rule 30 supports this view. In the version adopted June 20, 1973 before enactment of the Act (January 3, 1975), the rule fixed a maximum ninety-day period between arraignment and trial but provided that "failure to conform with the time limits herein prescribed shall not require dismissal of the prosecution." The rule was amended May 26, 1976, and again it provided that "[e]xcept as required by 18 U.S.C. § 5036 [relating to juveniles] or the Interstate Agreement on Detainers, failure to comply with the time limits prescribed herein shall not require dismissal of the prosecution." That version was repealed on November 27, 1979 and the present rule, adopted June 30, 1980, became effective July 1, 1980. The history thus demonstrates that, while the judges of the District Court of Maryland have repeatedly set time limits on the trial of criminal cases, they adopted the sanction of dismissal for violation of the limits only under the compulsion of the Act and in the exercise of the authority vested in them by the Act.

In sum, we conclude that the constitutional issue is before us and it is our duty to decide it.

### III.

We turn now to the merits. In striking down the Act, the district court relied on two distinct arguments: (1) that the Act's mandatory dismissal sanction for violation of its deadline determines "the

---

**6.** Rule 48(b) authorizes a district court to dismiss an indictment "if there is unnecessary delay in bringing a defendant to trial ...." The Maryland local rules (discussed in the text) from 1973 to date all recite that the power to dismiss under Rule 48 is reserved to the court. The authority to dismiss under Rule 48 would not have been exercised in this case because the trial date was set for the convenience of the court. It can hardly be said that, when a court concludes that because of other pending matters it cannot reach a case within a given period, the delay is "unnecessary" within the meaning of Rule 48(b).

actual substantive outcome of individual criminal cases" and thereby usurps the adjudicative role which the Constitution assigns to the judiciary; and (2) that the Act is "an unwarranted intrusion into the administration of the judicial system." 515 F.Supp. at 636. We find neither argument persuasive.

## A. Claimed Determination of Outcome.

The district court supported its first argument by reference to *United States v. Klein*, 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871). There the Supreme Court struck down a federal statute providing that no Presidential pardon accorded former noncombatant rebels should be admitted as evidence of loyalty to the United States, and, further, that a person's acceptance of such a pardon without written protest should be conclusive evidence of disloyalty. The statute also purported to deprive the Supreme Court of jurisdiction over pending claims based on such pardons. The Court held that the statute violated the separation of powers in that it "inadvertently passed the limit which separates the legislative from the judicial power" by "forbidd[ing] [the Court] to give an effect to evidence which, in its own judgment, such evidence should have, and [by directing the Court] to give it an effect precisely contrary." The Court also noted that that statute "impair[ed] the effect of a pardon, and thus infring[ed] the constitutional power of the Executive." *Id.* at 146–47.

*Klein* includes sweeping dicta casting doubt on Congress' power to "prescribe rules of decision to the judicial department of the government in cases pending before it." *Id.* at 146. Such dicta, however, are troublesome inasmuch as the prescription of

general rules of substantive law lies at the heart of the legislative function, and courts are obliged to apply the positive law in effect at the time of the judgment. *See* P. Bator, D. Shapiro, P. Mishkin & H. Wechsler, *Hart & Wechsler's The Federal Courts and the Federal System,* 316 n.4 (2d ed. 1973). Hence the better reading of *Klein* is quite narrow and construes the case as holding only that Congress violates the separation of powers when it presumes to dictate "how the Court should decide an issue of fact (under threat of loss of jurisdiction)" and purports "to bind the Court to decide a case in accordance with a rule of law independently unconstitutional on other grounds." *Id.* at 316.[7] Thus confined, *Klein* does not support the district court's decision in the instant case.

We assume that the application of existing law to the facts of a case properly before the courts is a judicial function which the legislature may not constitutionally usurp. *Klein* is nevertheless inapposite, since the Speedy Trial Act lays down no "rules of decision," but only rules of practice and procedure. Many cases have upheld the power of Congress to prescribe rules of practice and procedure for the federal courts.[8] *See Hanna v. Plumer,* 380 U.S. 460, 472, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965); *Palermo v. United States,* 360 U.S. 343, 353 n.11, 79 S.Ct. 1217, 1225 n.11, 3 L.Ed.2d 1287 (1959); *Tot v. United States,* 319 U.S. 463, 467, 63 S.Ct. 1241, 1244, 87 L.Ed. 1519 (1943); *Sibbach v. Wilson & Co.,* 312 U.S. 1, 9, 61 S.Ct. 422, 424, 85 L.Ed. 479 (1941); *Wayman v. Southard,* 23 U.S. (10 Wheat.) 1, 43, 6 L.Ed. 253 (1825). As a matter of facial constitutionality, we see no difference between the time constraints and dismissal sanction of the Speedy Trial Act

7. A broader reading of Klein would conflict with the Supreme Court's recognition that, subject to the requirements of due process, "Congress has power to prescribe what evidence is to be received in the courts of the United States." *Tot v. United States,* 319 U.S. 463, 467, 63 S.Ct. 1241, 1245, 87 L.Ed. 1519 (1943) (footnote omitted).

8. Generally, of course, Congress has delegated the rulemaking power to the Supreme Court

which in turn has delegated some rulemaking authority to the district courts and to the courts of appeals. *See* Rule 83, F.R.Civ.P.; Rule 57, F.R.Crim.P.; Rule 47 F.R.A.P. But the Supreme Court is required to report proposed rules to Congress, and Congress reserves the right to veto those which it finds unsatisfactory. *See* 18 U.S.C. § 3771; 28 U.S.C. §§ 2071–2072.

and the host of other procedural requirements of unquestioned validity by which Congress regulates the courts of its creation—such measures as the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, the Federal Rules of Appellate Procedure, the Federal Rules of Evidence, and statutes prescribing who may sue and where and for what.

The district court's characterization of the Act as arrogating "the judicial function of determining guilt or innocence," 515 F.Supp. at 636, simply cannot be sustained. Statutes of limitation provide perhaps the closest analogy. Few would suggest that such statutes intrude upon the judiciary's substantive decisional role. The suggestion rings just as hollow when applied to the time limits and dismissal sanction of the Speedy Trial Act, which dispose of cases solely on the procedural ground of undue delay and without regard to the guilt or innocence of the accused.

### B. Claimed Violation of Separation of Powers.

The district court's second ground of decision was that the Speedy Trial Act violates the separation of powers by abridging the courts' inherent power to administer their dockets. See 515 F.Supp. at 631. In support of this argument, the district court marshaled a line of state court decisions invalidating efforts by state legislatures to fix mandatory deadlines for the disposition of pending cases. See Resolute Insurance Co. v. Seventh Judicial District Court of Oklahoma County, 336 F.Supp. 497, 503 (W.D.Okl.1971) (construing Oklahoma constitution); Sands v. Albert Pike Motor Hotel, 245 Ark. 755, 434 S.W.2d 288 (1968); Holliman v. State, 175 Ga. 232, 165 S.E. 11, 14–15 (1932); State ex rel. Kotsas v. Johnson, 224 Ind. 540, 69 N.E.2d 592, 595 (1946); Riglander v. Star Construction Co., 98 App. Div. 101, 90 N.Y.S. 772 (1905); Atchison, Topeka & Santa Fe Railway Co. v. Long, 122 Okl. 86, 251 P. 486 (1926). See also Lindauer v. Allen, 85 Nev. 430, 456 P.2d 851 (1969).

Representative of these cases is Schario v. State, 105 Ohio St. 535, 138 N.E. 63 (1922). The Ohio legislature enacted a statute providing that convictions for a certain criminal offense could be appealed only within thirty days of judgment, and then only if the appellate court heard the appeal within thirty days of its filing. The Supreme Court of Ohio struck down the statute on the ground that "the legislative branch of the government is without constitutional authority to limit the judicial branch of the government in respect to when it shall hear or determine any cause of action within its lawful jurisdiction." 138 N.E. at 64. The court said:

Whether or not justice is administered without "denial or delay" is a matter for which the judges are answerable to the people, and not to the General Assembly of Ohio. Manifestly, when a case can be heard and determined by a court must necessarily depend very largely upon the court docket, the gravity of business submitted to the court, the nature, the importance, and the difficulties attending the just and legal solution of matters involved. It would be obviously unfair to the court, as well as to other parties interested in the early and expeditious determination of their causes, to require a court to suspend or delay equally important matters therefore submitted to the court for its consideration and determination in order to give preference to some particular case or character of cases. At least, that is a matter that should be most properly and wisely left to the sound discretion of the court.

Whether or to what extent the federal courts possess a power of self-administration which invokes the separation of powers doctrine is apparently a question of first impression. Federal cases have sometimes recognized that a federal trial court possesses "inherent power to control its own docket to ensure that cases proceed before it in a timely and orderly fashion." United States v. Correia, 531 F.2d 1095, 1098 (1 Cir. 1976). See Landis v. North American Co., 299 U.S. 248, 254, 57 S.Ct. 163, 165, 81 L.Ed. 153 (1936). Such references, however,

merely underscore a federal trial court's discretion in the issuance of stays and continuances and the limited scope of appellate review of such decisions. It is another matter altogether to argue that federal courts possess inherent power over their dockets to the exclusion of direct congressional efforts to improve the administration of justice.

Arguably, whatever control federal courts wield over their dockets is merely a power to make procedural rules in the absence of congressional directives. *Cf. Palermo v. United States,* 360 U.S. 343, 353 n.11, 79 S.Ct. 1217, 1225 n.11, 3 L.Ed.2d 1287 (1959) ("The power of this Court to prescribe rules of procedure exists only in the absence of a relevant Act of Congress"). If so, the time limits and dismissal sanction of the Speedy Trial Act assuredly constitute a valid procedural directive which preempt any contrary assertion of inherent power by the court. As such, they must be obeyed.

There may be grounds, however, for distinguishing between procedure and administration and recognizing a limited power of institutional self-administration in the federal judiciary. *See generally* Levin & Amsterdam, *Legislative Control over Judicial Rulemaking: A Problem in Constitutional Revision,* 107 U.Pa.L.Rev. 1 (1958).[9] For present purposes, we assume without deciding that federal courts possess some measure of administrative independence such

that congressional intervention would, at some extreme point, "pass[ ] the limit which separates the legislative from the judicial power." *Klein,* 80 U.S. (13 Wall.) at 147. It does not follow, however, that the Speedy Trial Act represents such an extreme. *See* Comment, 91 Harv.L.Rev. 1925 (1978).

The principle of the separation of powers does not set the three branches of government apart in absolute isolation. *United States v. Nixon,* 418 U.S. 683, 707, 94 S.Ct. 3090, 3107, 41 L.Ed.2d 1039 (1974). As Justice Jackson wrote in *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952): "While the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government. It enjoins upon the branches separateness but interdependence, autonomy but reciprocity." *Id.* at 635, 72 S.Ct. at 870 (concurring opinion).

Because the separation of powers is not an absolute, but a working principle of government, the Supreme Court takes "a pragmatic, flexible approach" when called upon to adjudicate clashes between coordinate branches. *Nixon v. Administrator of General Services,* 433 U.S. 425, 442, 97 S.Ct. 2777, 2789, 53 L.Ed.2d 867 (1977).[10] In determining whether the Speedy Trial Act disrupts the constitutional balance between

---

**9.** These commentators extract from the state cases like those cited above the proposition that there is a third realm of judicial activity, neither substantive nor adjective law, a realm of "proceedings which are so vital to the efficient functioning of a court as to be beyond legislative power." This is the area of minimum functional integrity of the courts, "what is essential to the existence, dignity and functions of the court as a constitutional tribunal and from the very fact that it is court." Any statute which moves so far into this realm of judicial affairs as to dictate to a judge how he shall judge, or how he shall comport himself in judging or which seeks to surround the act of judging with hampering conditions clearly offends the constitutional scheme of the separation of powers and will be held invalid.
Levin & Amsterdam, *supra,* at 31–32 (footnotes omitted). This notion may have force as applied to common-law courts, but it becomes highly problematical when imported to statuto-

ry federal courts of limited jurisdiction. Even as regards state courts, moreover, the commentators are careful to qualify their argument. They acknowledge that judicial "independence requires no such immunity as would remove from the legislature all power to adjust state courts to the important needs of the people of the state." *Id.* at 35. They propose a scheme of concurrent judicial and legislative power to make administrative and procedural rules for the state courts. *See id.* at 37–42.

**10.** That a power may be described as "inherent" in no way exempts it from this flexible approach. *See Michaelson v. United States,* 266 U.S. 42, 65–66, 45 S.Ct. 18, 19–20, 69 L.Ed. 162 (1924) (recognizing that the inherent power of federal courts to punish for contempt is subject to regulation by Congress, provided such regulation neither "abrogate[s] [that power], nor render[s] it practically inoperative").

Congress and the courts, "the proper inquiry focuses on the extent to which [the Act] prevents the [judiciary] from accomplishing its constitutionally assigned functions." *Id.* at 443, 97 S.Ct. at 2790. A considerable degree of congressional intervention in judicial administration is constitutionally permissible if such intervention is "justified by an overriding need to promote objectives within the constitutional authority of Congress." *Id.* (citation omitted).

While the district court purported to apply the mode of analysis prescribed in *Nixon v. Administrator, see* 515 F.Supp. at 635, we think that its discussion merely assailed the wisdom of the Speedy Trial Act. Its opinion criticizes the "premise that the Legislature is better suited to regulating judicial procedure than the courts themselves." *Id.* at 636–37. It argues that Congress, in passing the Act, accorded too much weight to speedy criminal trials and too little weight to the burden which the Act's time limits place upon the courts and the resulting disruption of their civil dockets. *See id.* at 637–38. By way of example, the opinion notes that if the Act had been given effect in this case, a long-scheduled civil antitrust case would necessarily have been rescheduled—a result which the court deemed "the height of judicial inefficiency and inequity." *Id.* at 640.

Under *Nixon v. Administrator,* the first question should be whether the prescription of speedy trial deadlines is "within the constitutional authority of Congress." The district court implied that since the Sixth Amendment protects the right to a speedy trial in inexact terms,[11] Congress may not properly fix definite time limits for trial. 515 F.Supp. at 639. The Sixth Amendment, however, merely secures certain minimal trial rights against encroachment by government. In no way does it prevent Congress from according the accused more protection than the Constitution requires, nor does it preclude Congress from acting on the public's interest in speedy justice. *See Barker v. Wingo,* 407 U.S. 514, 523, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101 (1972).

Both the power of Congress to constitute inferior federal courts in which may be vested some or all of the judicial power of the United States, U.S.Const.Art. I, § 8, cl. 9, and the power to make laws deemed "necessary and proper" to the execution of § 8 powers vested in Congress, *id.* Art. I, § 8, cl. 18, would appear to authorize Congress to enact laws, such as the dismissal sanction, to enforce the time limits of the Speedy Trial Act.

Once it is established that trial rights are a proper subject of legislation, the question becomes whether the particular provisions of the Speedy Trial Act intrude upon the zone of judicial self-administration to such a degree as to "prevent[ ] the [judiciary] from accomplishing its constitutionally assigned functions." We do not think that the Act's impact upon the courts can fairly be described in such extreme terms. First, the Act qualifies its mandatory dismissal sanction for untimeliness by providing that the court may dismiss without prejudice, subject to certain criteria specified in the Act. 18 U.S.C. § 3162(a)(2). Second, the Act excludes certain unavoidable delays from computation in the determination of speedy trial deadlines. *Id.* § 3161(h). Third, the Act excludes from the statutory periods delay resulting from a continuance granted by the trial court upon a finding "that the ends of justice served by [the continuance] outweigh the best interests of the public and the defendant in a speedy trial." *Id.* § 3161(h)(8)(A). To be sure, the latter authority cannot be exercised "because of *general* congestion of the court's calendar," *id.* § 3161(h)(8)(C) (emphasis added), but arguably it is available for resolving specific, temporary scheduling conflicts if the ends of justice so require. Finally, the Act permits the judicial council of a circuit to suspend the time limits imposed by the Act when a district court, "due to the status of its court calendars," cannot meet the time constraints by the efficient use of existing resources. *Id.* § 3174.

As noted above, the district court indicated that it could not meet the time limits

---

**11.** "[T]he accused shall enjoy the right to a speedy ... trial ...." U.S.Const.Amend. VI.

prescribed by the Act without rescheduling a complex antitrust suit, at great inconvenience to the parties, the witnesses, and the court. The record, however, does not indicate when the antitrust case began or ended. Defendant in the instant case was tried without a jury on a stipulation of facts. The trial was over in a matter of minutes, and the record does not exclude the possibility that it could have been held during a regular or special recess in the antitrust suit without unduly disrupting that trial or violating the requirements of the Speedy Trial Act.

Moreover, we take notice of the fact that the District of Maryland is a multi-judge court. It does not appear of record that no other judge of that court could have tried Brainer within the seventy-day period mandated by the Act. Even in a district court, which employs an individual calendar system, "all judges must share responsibility for the prompt disposition of criminal cases, must employ a team approach to those cases, and, when necessary, must reassign them in order that they may be tried according to the commands of the Sixth Amendment and Criminal Rules 48(b) and 50." *Hodges v. United States,* 408 F.2d 543, 551–52 (8 Cir. 1969) (Blackmun, Circuit Judge). *See also United States v. Fay,* 505 F.2d 1037, 1041 (1 Cir. 1974); *United States v. DeLeo,* 422 F.2d 487, 496 (1 Cir. 1970). These comments are equally applicable to the district courts' duty under the Speedy Trial Act.

C. Summary.

To summarize, we hold the Act constitutional both on its face and as applied. We do not foreclose the possibility that the time constraints and dismissal sanction of the Act could, in an extreme case, "prevent[ ] the [judiciary] from accomplishing its constitutionally assigned functions." *Nixon v. Administrator of General Services,* 433 U.S. at 443, 97 S.Ct. at 2790. In light of the several safety-valves provided by the Act, that possibility would appear to be remote. In any event, this is not such a case.

IV.

From what we have said, it follows that Brainer's conviction cannot stand because the indictment against him should have been dismissed. By 18 U.S.C. § 3162, however, the district court has discretion, after considering the statutorily prescribed criteria, to dismiss with or without prejudice and thus to determine if Brainer may be prosecuted anew. The case must therefore be returned to the district court to make this determination.

REVERSED AND REMANDED.

MURNAGHAN, Circuit Judge, concurring:

Much of the majority opinion has my wholehearted agreement. I, too, am of the opinion, for the reasons Judge Winter has stated, so well, that the issue of the enforceability of the seventy day time limit by dismissal of the indictment for failure to meet it remained alive and in need of resolution, despite the Government's reversal of position. Indeed, with none of the majority opinion do I necessarily take substantive issue. My difference springs simply from the conviction that, on so sensitive a subject as the demarcation between the power of the legislature on the one hand, and of the judiciary, on the other, no more should be said than is absolutely necessary for disposition. *See Liverpool Steamship Co. v. Emigration Commissioners,* 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899 (1885). A cardinal rule of our jurisprudence cautions that constitutional adjudication should be avoided. *United States v. Clark,* 445 U.S. 23, 27, 100 S.Ct. 895, 899, 63 L.Ed.2d 171 (1980); *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932). Declaring a statute constitutional is significant involvement in the political arena, different only in degree, from a declaration of unconstitutionality.

The potential for different and greater battles on the major constitutional front to which the case *sub judice* would take us, if a constitutional decision is to be made, is always present and today's dicta may prove mischievous for tomorrow's cases in unfore-

seen and unforeseeable ways. Indeed, *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871), is an excellent example, albeit at the opposite extreme, of the wisdom of avoiding *obiter* statements on a particularly complex and sensitive issue. The majority panel opinion effectively states the compelling case for suppressing "sweeping dicta" which could, and have indeed proved "troublesome." *Cf. Korematsu v. United States,* 323 U.S. 214, 245–246, 65 S.Ct. 193, 207, 89 L.Ed. 194 (1944), *reh'g denied,* 324 U.S. 885, 65 S.Ct. 674, 89 L.Ed. 1435 (1945) (Jackson, J., dissenting) ("The principle then lies about like a loaded weapon ready for the hand of any authority that can bring forward a plausible claim of an urgent need.").

Accordingly, while I start on the same journey in company with my colleagues and travel much of the road with them, arriving in the end at the same destination on the merits, I choose a direct and simpler route which avoids deciding knotty constitutional questions.

Judge Young, on constitutional grounds, sought to avoid constraints on his, or more appropriately the judiciary's, control of the length of time following indictment and arraignment in which a criminal defendant must be tried. He denied a congressional power to impose such constraints.

However, over and beyond the considerations alluded to in the majority's opinion, there was another factor present which not only merits mention, but is indeed decisive of the case now before us. The United States District Court for the District of Maryland, operating under its power to adopt local rules of procedure, had, on May 26, 1976 almost unanimously [1] adopted a time limit of seventy days for bringing a criminal case to trial. *See* Local Rule 30(4)(a) of the United States District Court, District of Maryland. I am prepared to assume that the seventy-day limit represents the considered judgment of the then seven active judges of the District Court of Maryland as to the time requirements that would best satisfy the conditions of the

docket and conveniences of the court. The trial date fixed by Judge Young was outside the time limit imposed by the local court rules as well as outside the time limit set by Congress. By reference to the pertinent section (18 U.S.C. § 3162) of the Speedy Trial Act, the local rule also mandates dismissal for failure to comply with the seventy day time limit.

There are two ways of looking at the local rule. One would comport with Judge Young's view of matters by implying, although the rule does not so state, that it is subject to a condition reading: "If and to the extent, if any, that Congress had the constitutional power to force judges to abide by the Speedy Trial Act and adopt regulations under it . . . ." The other more reasonable view is that the decision to adopt a seventy-day limit, made by the judges of the district, including Judge Young, simply evinces a concordance with congressional opinion, in that the local rule is responsive to the administrative necessities of the district court as well as to the mandate of the Sixth Amendment. The latter reading of the rule is supported by the fact that in 1973, all the then active judges of the district, had enacted a rule which likewise set a ninety-day limit on the time in which a criminal trial had to be commenced. The District of Maryland's local rule was enacted prior to the passage of the Speedy Trial Act. *See* Local Rule 30(2)(b) of the United States District Court for the District of Maryland, *No. 642 Miscellaneous Docket,* Entry No. 50 (June 20, 1973). Clearly, it has been the wisdom of the District of Maryland to make use of such time limits for nearly a decade. That the sanction of dismissal first saw the light of day in the Speedy Trial Act does not militate against a conclusion that the district court, with the objective of national uniformity, or for other meritorious reasons, accepted it as satisfactory, or at any rate tolerable, *from the court's point of view.*

Even, indeed especially, if Judge Young is right that the Speedy Trial Act time limit

---

1. One member did not vote and presumably was not present.

amounts to an unconstitutional infringement by Congress of the doctrine of separation of powers, then the courts themselves must necessarily have the power to set time limits for bringing criminal cases to trial. I would read the action of the District of Maryland in adopting the local rule as a determination by the judges involved that a time limit should exist and that the court should adopt ways and means to apply it in an evenhanded and uniform way. Nothing would preclude the judges in their rules from validly adopting and incorporating by reference the language of the Speedy Trial Act, even assuming that the Act is itself unconstitutional. *See* Fed.R.Crim.P. 57 (empowering the district courts to promulgate rules). *Cf. United States v. Inman,* 483 F.2d 738 (4th Cir. 1973), *cert. denied,* 416 U.S. 988, 94 S.Ct. 2394, 40 L.Ed.2d 766 (1974) (district court has the right to control its docket). If the Act's unconstitutionality stems merely from the fact that Congress was the wrong, and the court the right, party to adopt the substantive provisions of the Act, such subsequent judicial adoption and incorporation by reference would cure the defect.

Inasmuch as the local rules of the United States District Court, and particularly local rule 30(4)(a) setting the seventy-day limit have an independent and constitutional life of their own, I would rely on them for the decision that Judge Young was wrong in refusing to dismiss the case. *See United States v. Hvass,* 355 U.S. 570, 575, 78 S.Ct. 501, 504, 2 L.Ed.2d 496 (1958) (local rules have force of law). *Accord United States v. Warren,* 601 F.2d 471 (9th Cir. 1979).

We should leave for another day the tangled questions addressed by Judge Winter. For example, had the local rule remained ninety days instead of dropping to a seventy-day limit, when amended by the district court, there would then be a present conflict between the provisions made by Congress and those made by the court. Only in such circumstances would it be necessary to face up to a perplexing question which I regret to see dealt with in a vacuum.

If the view I have adopted were to prevail, Judge Young would not continue to invalidate the seventy day limit in other cases. Even if our opinion were to rest simply on the local rule and not on the unconstitutionality of the Speedy Trial Act, there would be an appellate holding and I do not assume that Judge Young would ignore it. The risk of inconsistency, as among judges of the United States District Court for the District of Maryland, referred to (slip op. at 6) by the majority panel members, therefore, would not exist.

I most respectfully ask my colleagues: "Who are the disputants here?". It takes two to make a law suit as surely as it does to tango. If the judiciary, the United States District Court for the District of Maryland in particular, wants to take issue, and present a case or controversy, as to the constitutionality of the Speedy Trial Act, all it need do is prescribe a different time period in Local Rule 30 and wait for a case within it, but outside the seventy day limit contained in the Speedy Trial Act. Or it can adopt supplemental language reinstating the provision that: "Failure to conform with the time limits herein prescribed shall not require dismissal of the prosecution." Absent such circumstances, we should wait, as we uniformly do in other situations, and refrain from issuing an advisory opinion.[2]

The fact is that, if the constitutionality of the Speedy Trial Act should be addressed, it should be only if and when the prospect of disagreement between legislature and judiciary patently exists. As long as Local Rule 30 continues in its present form, no such possibility of confrontation exists as to the point we are asked to consider. Hence, I respectfully adhere to the position that we should not address it.

---

**2.** I have not retreated from my earlier stated view that the case, in its entirety, is not moot. It must be decided, but the route to decision that the majority has chosen encounters mootness. If, as it appears, there is an alternative basis of decision, resolution of the constitutional question is unnecessary. However, the basic question of the validity of the seventy day time limit remains, and must be decided.

Judge Winter, in addressing the constitutional issue, has done so adroitly, which is hardly surprising for he is an outstanding craftsman. But even for the master worker in silver, silence may be golden.

Accordingly and respectfully, I concur.