# Constitutionality of a Judicial Review Provision Providing for Automatic Affirmance of Agency Decisions

The Northeast Interstate Low-Level Radioactive Waste Management Compact would establish a Commission whose final administrative decisions would be subject to review in the United States Court of Appeals for the District of Columbia Circuit. A proposed amendment to a bill granting the consent of Congress to the Compact provides that if review is sought of the Commission's decision relative to the designation of a "host state" for a regional radioactive waste disposal facility and the court of appeals does not rule within ninety days after the petition for review has been filed, the Commission's decision "shall be deemed to be affirmed."

This provision raises serious constitutional problems that implicate the doctrine of separation of powers. Although Congress has broad authority to prescribe rules concerning judicial practice, procedure, jurisdiction, and remedies and to establish the substantive law that governs judicial decisions, the proposed amendment exceeds this authority by effectively exercising the core judicial function of deciding particular cases.

December 13, 1985

LETTER FOR THE CHAIRMAN, SENATE COMMITTEE ON THE JUDICIARY

This responds to your request that we review the constitutionality of a proposed amendment to the judicial review provisions of S. 1798, a bill "[t]o grant the consent of the Senate to the Northeast Interstate Low-Level Radioactive Waste Management Compact." The amendment would set a ninety-day time limit for judicial review of certain administrative decisions made by the Commission established under the Compact, and would mandate that the decision of the Commission be "deemed affirmed" if the court did not rule within that time. As we discuss below, the proposed amendment raises serious constitutional problems.

The purpose of S. 1798 is to grant the consent of Congress, pursuant to the Compact Clause, U.S. Const. art. I, § 10, cl. 3,[1] and § 4(a)(2) of the Low-Level Radioactive Waste Policy Act, 42 U.S.C. § 2021d(a)(2), to the Northeast Interstate Low-Level Radioactive Waste Management Compact. The Compact, which was negotiated by Connecticut, New Jersey, Delaware, and Maryland, implements a regional approach to the management and disposal of low-level radioactive waste by providing a mechanism for establishment of regional waste disposal facilities and by granting to party states the right to deposit wastes at those facilities. The Compact establishes the Northeast Interstate Low-Level Radioactive Waste Commission (Commission), composed of members appointed by the party states. Among other responsibilities, the Commission may designate "host states" that must establish regional disposal facilities

---

[1] The Compact Clause provides that "[n]o State shall, without the consent of Congress, . . . enter into any Agreement or Compact with another State."

118

to accept wastes generated by other party states, if the states fail to pursue voluntarily the development of such facilities. Art. IV(i)(9).[2]

The Compact establishes jurisdiction in the federal courts for suits arising from actions of the Commission. Jurisdiction is provided in the United States District Court for the District of Columbia for "all actions brought by or against the Commission." Any actions initiated in a state court "shall be removed" to federal court. Art. IV(n). In addition, the United States Court of Appeals for the District of Columbia Circuit is given jurisdiction "to review the final administrative decisions of the Commission." Art. IV(o).[3] Persons aggrieved by a final administrative decision of the Commission may obtain review of the decision by filing a petition for review within sixty days after the Commission's final decision. Art. IV(o)(1). On review, the court of appeals is precluded from substituting its judgment for that of the Commission "as to the decisions of policy or weight of the evidence on questions of fact," but may remand the case for further proceedings if it finds that the petitioner has been aggrieved because the findings, inferences, conclusions, or decisions of the Commission are: (a) in violation of the Constitution of the United States; (b) in excess of the authority granted to the Commission under the Compact; (c) procedurally defective "to the detriment of any person;" or (d) arbitrary, capricious, or an abuse or clearly unwarranted exercise of discretion. Art. IV(o)(3).

As drafted, the Compact provides that the court of appeals "shall accord . . . an expedited review" to any Commission decision "relative to the designation of a host state." Art. IV(o)(2). The proposed amendment you have asked us to review would expand on the requirement for expedited review by providing as follows: "[I]f the Court does not rule within 90 days after a petition for review has been filed, the Commission's decision shall be deemed to be affirmed." We assume that the purpose of this amendment is to ensure that the court of appeals will expeditiously consider and rule on the designation of host states responsible for construction and operation of regional disposal facilities, so that the construction of such facilities can proceed as promptly as possible.[4] The effect

---

[2] The Commission also would exercise several other responsibilities, including approving the export or import of hazardous wastes not otherwise permissible under the Compact, accepting applications of other states to become members of the Compact, adopting a regional management plan for the disposal of low-level radioactive wastes, and overseeing implementation of the Compact. The Commission is given authority to hold hearings and to require testimony or other information from the party states, to intervene in judicial or administrative proceedings, and to impose sanctions on party states for violation of the Compact, including revocation of membership.

[3] The Compact does not define "final administrative decisions," nor does it state expressly that jurisdiction in the court of appeals to review such decisions is exclusive of the district court jurisdiction to review "all actions brought by or against the Commission." It does state, however, that the provision granting jurisdiction to the district courts "shall not alter the jurisdiction of the United States Court of Appeals for the District of Columbia Circuit to review the final administrative decisions of the Commission." Art. IV(n).

[4] Because the Compact negotiated by the states does not include this provision, the proposed amendment would in effect be a condition imposed by Congress on its consent to the Compact. Congress may attach binding conditions to its consent to the formation of an interstate compact, provided such conditions are otherwise within Congress' authority and not in contravention of any constitutional limits. See, e g., Petty v. Tennessee-Mo. Bridge Comm'n, 359 U S. 275 (1952); Tobin v. United States, 306 F.2d 270 (D.C. Cir. 1962), cert. denied, 371 U.S. 902 (1963). A state that objects to such conditions may, of course, withdraw from an interstate compact in accordance with its terms.

of this amendment would be to establish an outside limit of 150 days (sixty days for filing the petition for review and ninety days for the court's ruling) from the time of the Commission's determination to the end of review by the court of appeals. The amendment, however, would not just limit the time available to the court of appeals to rule on a petition for review; it would also effectively "affirm" any designation decision of the Commission not ruled on by the court within that time, regardless of whether the court had in fact reviewed the petition and determined that affirmance was warranted under the standards set forth in the Compact.

To our knowledge, this provision is virtually unprecedented. We are not aware of any comparable provision in statutes authorizing judicial review of administrative actions. The closest analogy we have found is the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, which requires that federal criminal defendants be charged and tried within certain time limits.[5] If the time limits are not met, the charges against the defendant must be dismissed, either with or without prejudice.[6] The constitutionality of the Speedy Trial Act was upheld by the Fourth Circuit in *United States* v. *Brainer*, 691 F.2d 691 (4th Cir. 1982). As discussed below, however, we believe that the purpose and effect of the Speedy Trial Act differ significantly from the purpose and effect of the proposed amendment, and therefore that the *Brainer* decision does not answer satisfactorily the difficult constitutional questions presented by the amendment.

Our primary concern is that the proposed amendment would violate the constitutionally mandated separation of powers between the Legislative and Judicial Branches. "Basic to the constitutional structure established by the Framers was their recognition that 'the accumulation of all powers, legislative, executive, and judiciary, in the same hands . . . may justly be pronounced the very definition of tyranny.'" *Northern Pipeline Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50, 57 (1982) (plurality opinion) (quoting *The Federalist* No. 47, at 300 (J. Madison) (H. Lodge ed. 1888)). Accordingly:

> [t]he Constitution sought to divide the delegated powers of the
> new Federal Government into three defined categories, Legisla-
> tive, Executive, and Judicial, to assure as nearly as possible, that

[5] The Speedy Trial Act requires, *inter alia*, that any information or indictment charging an individual with an offense be filed within 30 days from the date of arrest, and that the trial be commenced within 70 days of the filing of the information or indictment. 18 U.S.C. § 3161(a), (b), (c). The statute excludes from the computation of time several types of delay, including: delays resulting from other proceedings concerning the defendant; delays during which prosecution is deferred by agreement with the defendant; delays resulting from the absence or unavailability of the defendant or an essential witness; delays resulting from the mental incompetence or physical inability of the defendant to stand trial; delays resulting from the treatment of the defendant under 28 U.S.C. § 2902; and delays occasioned by the joinder of the defendant with a codefendant as to whom the time for trial has not run. 18 U.S.C. § 3161(h)(1)-(7). Also excluded are delays resulting from a continuance granted by any judge "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(8)(A).

[6] In determining whether to dismiss with or without prejudice, the court must consider three factors: the seriousness of the offense; the facts and circumstances of the case that led to the dismissal; and the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice. *Id.* § 3162(a)(2).

each branch of government would confine itself to its assigned responsibility. The hydraulic pressure inherent within each of the separate Branches to exceed the outer limits of its power, even to accomplish desirable objectives, must be resisted.

*INS* v. *Chadha*, 462 U.S. 919, 951 (1983); *see also Buckley* v. *Valeo*, 424 U.S. 1, 122 (1976).

The Constitution vests all federal judicial power "in one supreme Court and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. art. III, § 1. Thus, "our Constitution unambiguously enunciates a fundamental principle that the 'judicial Power of the United States' must be reposed in an independent Judiciary." *Northern Pipeline*, 458 U.S. at 60 (plurality opinion). As Alexander Hamilton wrote in *The Federalist*, it is necessary for the Judiciary to remain "truly distinct from the Legislature and the Executive. For I agree that 'there is no liberty, if the power of judging be not separated from the legislative and executive powers.'" *The Federalist* No. 78, at 466 (C. Rossiter ed. 1961) (citation omitted). Thus, it is a violation of the separation of powers for the Legislative and Executive Branches to exercise judicial power, just as it is unconstitutional for the Judiciary to engage in lawmaking or executive functions.

The core of the judicial power, which the Legislative and Executive Branches may not invade, is the rendering of decisions in court cases, that is, the "application of principles of law or equity to [the] facts" of a particular case. *Vermont* v. *New York*, 417 U.S. 270, 277 (1974); *see also Williams* v. *United States*, 289 U.S. 553, 578 (1933); *United States* v. *Klein*, 80 U.S. (13 Wall.) 128 (1872); *Murray's Lessee* v. *Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 284 (1856). Certainly Congress has the constitutional authority to enact laws establishing the framework within which judicial decisions must be made. It has broad authority to prescribe rules of practice and procedure,[7] to define and limit jurisdiction,[8] and to limit remedies available to litigants.[9] In addition, Congress prescribes the substantive law that governs judicial decisions.[10] But once that framework has been established, only the courts themselves can render the actual decisions.

Separation of powers questions regarding the exercise of the judicial power have frequently arisen in other contexts, such as cases concerning the powers of non-Article III courts. *See Northern Pipeline*, 458 U.S. at 63–76 (plurality opinion). The amendment discussed here, however, presents a different — and as we have said, a virtually unique — separation of powers question. Under the proposed amendment, if the court of appeals failed to rule on a petition for

---

[7] *See, e.g., Hanna* v. *Plumer*, 380 U.S. 460, 472 (1965); *Palermo* v. *United States*, 360 U.S. 343, 353 n.11 (1959); *Sibbach* v. *Wilson & Co.*, 312 U.S. 1, 9 (1941); *Wayman* v. *Southard*, 23 U.S. (10 Wheat.) 1, 43 (1825).

[8] *See, e.g., Sheldon* v. *Sill*, 49 U.S. (8 How.) 441 (1850); *Cary* v. *Curtis*, 44 U.S. (3 How.) 236 (1845).

[9] *See, e.g., Yakus* v. *United States*, 321 U.S. 414 (1944); *Lockerty* v. *Phillips*, 319 U.S. 182 (1943); *Lauf* v. *E.G. Shinner & Co.*, 303 U.S. 323, 330 (1938).

[10] *See, e.g., Vandenbark* v. *Owens Ill. Glass Co.*, 311 U.S. 538 (1941); *Carpenter* v. *Wabash Ry.*, 309 U.S. 23 (1940); *United States* v. *The Schooner Peggy*, 5 U.S. (1 Cranch) 102 (1801).

review within the prescribed time limit, the Commission's decision would "be deemed to be affirmed." Such an affirmance would be tantamount to a judgment of the court of appeals and would accordingly have a legal status very different from a mere decision of the Commission.[11] Such an affirmance would plainly represent an exercise of the core judicial function of deciding cases. Yet it would derive not from any action taken by the Judiciary, but from an automatic decisionmaking mechanism created by legislative enactment. Therefore, in enacting this amendment, Congress would effectively be creating a mechanical substitute to do the work of the court of appeals. Because of the novelty of the proposed amendment and the consequent lack of judicial authority addressing the constitutionality of similar measures, any judgment about the amendment's constitutionality must proceed from first principles relating to the separation of powers. Nevertheless, we believe that this measure would be unconstitutional.

We do not believe our conclusion is inconsistent with the Fourth Circuit's decision in *United States* v. *Brainer*, holding that the time constraints and dismissal sanction of the Speedy Trial Act do not violate the separation of powers. The *Brainer* court assumed that "the application of existing law to the facts of a case properly before the courts is a judicial function which the legislature may not constitutionally usurp." 691 F.2d at 695. But the court analogized the challenged provisions of the Speedy Trial Act to:

> the host of other procedural requirements of unquestioned validity by which Congress regulates the courts of its creation — such measures as the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, the Federal Rules of Appellate Procedure, the Federal Rules of Evidence, and statutes prescribing who may sue and where and for what.

*Id.* at 696. The court added that "[s]tatutes of limitation provide perhaps the closest analogy." *Id.*

---

[11] In general, an affirmance by the court of appeals of a final administrative decision would bar relitigation of the same claims under the doctrines of res judicata and collateral estoppel. Because of the preclusive effect of an "affirmance," it is possible that an individual who had sought judicial review could mount a due process challenge to the judicial review provisions.

Congress may, of course, preclude or limit judicial review in cases involving statutory rights. *See, e.g., Morris* v. *Gressette*, 432 U.S. 491 (1977); *Weinberger* v. *Salfi*, 422 U.S. 749, 761–62 (1975); *Johnson* v. *Robison*, 415 U.S. 361 (1974); *see generally Abbott Laboratories* v. *Gardner*, 387 U.S. 136, 140 (1967). An absolute bar against judicial review of constitutional claims, however, would raise difficult constitutional questions that have not been fully resolved by the Supreme Court. *See, e.g., Weinberger* v. *Salfi*, 422 U.S. at 762 (stating that an interpretation that absolutely precluded review of constitutional claims "would have raised a serious constitutional question of the validity of the statute"); *Briscoe* v *Bell*, 432 U.S. 404, 414–15 (1977) (upholding absolute preclusion of judicial review of Attorney General's determination under the Voting Rights Act as within Congress' specific power to enforce the Fourteenth and Fifteenth Amendments). Thus, although Congress could preclude any judicial review of Commission determinations on statutory grounds and leave to the original jurisdiction of the district courts any constitutional challenges to such determinations, the proposed amendment does not pursue this course. Rather, the practical effect of an "affirmance," given the operation of res judicata, could well be to cut off an individual's right to litigate constitutional issues, which would, as we have said, raise difficult constitutional questions.

122

Whatever the merits of these inexact analogies may be in the context of the Speedy Trial Act, they have no force here. For example, we see no meaningful comparison for separation of powers purposes between a statute of limitations, which bars a party from bringing suit after the passage of a specified period of time, and the proposed amendment, which may result in the rendering by extra-judicial means of a decision in a case that is properly before the court of appeals. A statute of limitations, unlike the proposed amendment, does not create an automatic decisionmaking mechanism to take the place of a court. A better rationale for the result in *Brainer* is that mandatory dismissal under the Speedy Trial Act is necessary to remedy a violation of the criminal defendant's statutory right to a speedy trial — a right that has roots in the Sixth Amendment and that plays an important role in safeguarding the accuracy of the trial process. As the Supreme Court has recognized in cases involving the Sixth Amendment speedy trial guarantee, dismissal of the action is really "the only possible remedy" for deprivation of a right to a speedy trial. *Barker* v. *Wingo*, 407 U.S. 514, 522 (1972).[12] The proposed amendment, by contrast, does not appear designed to protect any particular substantive right (let alone any constitutional right), for it mandates the automatic affirmance of the Commission no matter what the Commission has decided. Although the proposed amendment demonstrates Congress' desire to ensure expeditious review of the Commission's designation decisions, affirmance of such decisions cannot be viewed in any sense as a "remedy" to redress injury to other parties from delay in completion of judicial review. It is not at all clear, for example, that parties who support the Commission's decision would necessarily be injured by any further delay in review, or that affirmance of the decision would alleviate any such injury.

Moreover, under the Speedy Trial Act, the court has discretion to dismiss the case either with or without prejudice, based on the court's evaluation of the reasons for, and effect of, the delay in the particular case. The choice whether to give the dismissal preclusive effect is therefore left to the courts, and the courts are required to conduct the sort of factfinding that is at the core of the judicial function. No such latitude is given the court of appeals under the proposed amendment; regardless of the circumstances and the merits of the petition for review, the Commission's decision is automatically deemed to be affirmed once the ninety-day period has run.

In *Brainer*, the court also considered a separate constitutional challenge to the Speedy Trial Act based on the time limits imposed by the Act — that those

---

[12] In *Strunk* v. *United States*, 412 U.S. 434, 438–40 (1973), the Court explained:

By definition, such denial is unlike some of the other guarantees of the Sixth Amendment. For example, failure to afford a public trial, an impartial jury, notice of charges, or compulsory service can ordinarily be cured by providing those guaranteed rights in a new trial. The speedy trial guarantee recognizes that a prolonged delay may subject the accused to an emotional stress that can be presumed to result in the ordinary person from uncertainties in the prospect of facing public trial or of receiving a sentence longer than, or consecutive to, the one he is presently serving — uncertainties that a prompt trial removes. . . . In light of the policies which underlie the right to a speedy trial, dismissal must remain, as *Barker* noted, "the only possible remedy."

123

time limits, in and of themselves, "intrude upon the zone of judicial self-administration to such a degree as to 'prevent[ ] the [Judiciary] from accomplishing its constitutionally assigned functions.'" 691 F.2d at 698 (quoting *Nixon* v. *Administrator of Gen. Servs.*, 433 U.S. 425, 443 (1977)). Although expressing some doubt about the existence and scope of the Judiciary's inherent power to administer its own docket, the court concluded that the Speedy Trial Act did not unduly intrude upon that power. *Id.* at 698. In reaching that conclusion, however, the court cited the considerable flexibility provided by the Act, including the ability of the courts to dismiss an action without prejudice, the exclusion of certain common types of delay from the time limit, and the authority of the courts to grant continuances, upon certain conditions, if "the ends of justice ... outweigh the best interests of the public and the defendant in a speedy trial." *Id.*

There is no such flexibility built into the proposed amendment. Moreover, it may well be unreasonable in particular cases to require that the entire process of appellate decisionmaking be completed within ninety days. Ninety days is less than the time generally allowed under the Federal Rules of Appellate Procedure just for briefing a case.[13] We note that at the present time in the District of Columbia Circuit, the average case is not decided until almost seven months after the last brief is filed in the case.[14]

We do not believe that statutes prescribing a time limit for judicial decisions in particular types of cases are necessarily unconstitutional. *See, e.g.*, 28 U.S.C. § 1826(c) (imposing thirty-day limit for disposition of appeals under recalcitrant witness statute).[15] As the court noted in *Brainer*, the separation of powers inquiry must focus on the extent to which such time limits actually prevent the Judiciary from accomplishing its constitutionally assigned functions and on the justification for legislative intervention.[16] Without knowing how the time limit in question here would affect the ability of the District of Columbia Circuit to conduct its business, and without additional information about the need for and

[13] Under the Appellate Rules, the record must be filed within 40 days after service of the petition for review; the appellant must file his brief within 40 days after filing of the record; the appellee must file his brief within 30 days after service of the appellant's brief; and the appellant has 14 days after service of the appellee's brief to file a reply. *See* Fed. R. App. P. 17, 31.

[14] The Administrative Office of the United States Courts has informed us that as of June 1985, the average time in the District of Columbia Circuit from filing of the last brief to hearing or submission is 4.5 months, and the average time from hearing or submission to final disposition is 2.4 months.

[15] "The circuits are in general agreement that the passing of the 30–day period does not deprive an appellate court of jurisdiction." *United States* v. *Johnson*, 736 F.2d 358, 362 n.5 (6th Cir. 1984); *see also, e.g.*, *In re Grand Jury Proceedings (A Grand Jury Witness* v. *United States)*, 776 F.2d 1099, 1101–02 (2d Cir. 1985); *Melickian* v. *United States*, 547 F.2d 416, 417–20 (8th Cir.), *cert. denied*, 430 U.S. 986 (1977). *But see In re Berry*, 521 F.2d 179, 181 (10th Cir.) (dictum that 30–day rule is mandatory), *cert. denied*, 423 U.S. 928 (1975).

[16] The *Brainer* court stated:

> In determining whether the Speedy Trial Act disrupts the constitutional balance between Congress and the courts, "the proper inquiry focuses on the extent to which [the Act] prevents the [Judiciary] from accomplishing its constitutionally assigned functions." A considerable degree of congressional intervention in judicial administration is constitutionally permissible if such intervention is "justified by an overriding need to promote objectives within the constitutional authority of Congress."

691 F.2d at 697–98 (quoting *Nixon*, 433 U.S. at 443).

purpose of the proposed amendment, we cannot predict how that balance would be struck.

In sum, we believe that the proposed amendment raises serious constitutional problems arising from the doctrine of separation of powers. The most critical of those problems — that Congress would usurp the Judiciary's role in determining the outcome of particular cases — could be alleviated by deleting from the amendment the provision that if the court of appeals does not rule on a petition for review within ninety days of its filing, the Commission's decision "shall be deemed to be affirmed."

PHILLIP D. BRADY
*Acting Assistant Attorney General*
*Office of Legislative and*
*Intergovernmental Affairs**

* NOTE: This letter was drafted by the Office of Legal Counsel for the signature of the Acting Assistant Attorney General for the Office of Legislative and Intergovernmental Affairs. Congress subsequently granted its consent to the Compact, *see* Pub. L. No. 99–240, §§ 212, 227, 99 Stat. 1842, 1860, 1909–24 (1986) (codified at 42 U.S.C. § 2021d note), and the proposed amendment discussed herein became part of the Compact, *see* art. IV(o)(2), 99 Stat. at 1917.